## John S. Newberry v. The Detroit and Lake Superior Iron Manufacturing Company.

*Transfer of stock: Equities: Judgment Creditors: Notice.* A transfer of stock, whether recorded or not, conveys the interest of the holder, and is valid except as against persons having equities; and a judgment creditor buying at an execution sale, with notice of the transfer, can get no better title than his debtor had.

*Levy on stock: Transfer on books of company: Laches.* A person proceeding under the statute to levy upon stock and sell it under execution, is bound within a reasonable time to have his title perfected, by having it transferred upon the books of the company, that it may obtain the rights against him which it is entitled by law to exercise against its stockholders; and a party who delays for several years to have such transfer recorded, and waits until the stock has become valuable by the activity and enterprise of others, and new interests have intervened, and then applies to obtain an account and transfer, is estopped from setting up such claim, and equity will not enforce his demands.

*Heard April 24th.    Decided June 2d.*

Appeal in Chancery from Wayne Circuit.

The bill in this cause was filed to compel defendant to issue a certificate to complainant of certain shares of stock.

The cause was heard upon pleadings and proofs, and the bill was dismissed.

The facts are stated in the opinion.

*Newberry & Pond,* for complainant.

1. At the time of the levy and sale under which complainant claims title to the stock in controversy, Russell, the execution debtor, had an interest in such stock which was subject to seizure and sale under execution.

*Sec. 4476, Comp. L. p. 1213,* provides that any share or interest of a stockholder, in any corporation, created under the laws of this state, may be taken in execution and sold, in a manner specified; and § *4478, p. 1214,* requires the officers appointed to keep a record or account of the shares or interest of the stockholders therein to give to the officer levying an execution on the stock of the stockholder, a certificate of the number of shares or the amount of interest held by such judgment debtor.

Clearly, the intention of the statute is to make any interest which a stockholder may have subject to be taken in execution and sold.

As from the incorporeal nature of the property the officer levying can not take actual manual possession of it, there is no such reason, as exists in the case of corporeal personal property of which actual possession may be taken, why it can not be levied upon and sold, subject to a lien, if one exists.

And indeed there is no insuperable objection to the seizure and sale of the interest of a debtor in corporeal personal property, the actual possession of which is held by a creditor under a lien; and it is often permitted. — *Com. L.* § *4461; 6 Hill, 484; 1 N. Y. 20; 2 E. D. Smith, 352; 3 Watts, 288; 32 Penn. 12.*

If the interest of a stockholder in stock, upon which the corporation has a lien, is seized and sold on execution, the right of the corporation may be protected by either of two methods, both unobjectionable, to wit:

*a.* It may issue new certificates of stock to the purchaser stating the lien to which it is subject.

*b.* It may withhold the issue of new certificates until the lien is discharged.

If there is no dispute as to the existence or extent of the lien, but the debt, on account of which it exists, is not due, or the purchaser of the stock not prepared to pay it immediately, the former would seem to be the better course. If the existence of the lien or its extent is disputed, the latter.

2. By the purchase, Newberry acquired a perfect title to Russell's interest in the stock, notwithstanding the prior transfer by him of the certificates and his subsequent general assignment for the benefit of creditors as set up in the answer and admitted by the stipulation.

It is conceded that complainant at the time he purchased had no notice of the transfer of the certificates, and hence

it is not claimed that he did not obtain title as against the transferees.

And we submit that the fact that he knew of the general assignment does not operate to defeat his title.

*a. Sec. 2149, Comp. L. p. 701*, provides that shares of stock in any corporation may be 'transferred by indorsement and delivery of the certificates thereof, but such transfer shall not be valid, except as between the parties thereto, until entered upon the books of the corporation in a manner described.

This language, we submit, is conclusive of the question.

The authorities construing similar statutes are in our favor. — *5 Gray, 373; 49 Me. 315.*

The cases which will be cited against this construction of our statute, relate to the effect of statutes not at all like ours above quoted, to wit: statutes which simply provide that corporations may make rules and regulations as to the manner of transferring stock upon their books.

*b.* Defendants can not, in this case, set up title in Russell's assignee under the assignment as a defense.

Clearly, by his purchase, complainant obtained the legal title to the stocks, and so far as appears, Russell's assignee has never laid any claim to it and *non constat* that he ever will; and if he should, complainant may resist it upon the grounds that such assignment was in fraud of creditors and invalid.

And hence, if defendants have reason to fear that such assignee will claim title to the stock as against them, their proper and only course is to file a bill of interpleader.

3. The alleged foreclosure of defendant's lien, and sale of the stock thereunder, is shown invalid and inoperative.

The corporation could not become a purchaser of the stock at such sale, and hence, can not claim anything under the attempted foreclosure. — *11 Mich. 139.*

4. Complainant has not lost his right to have certificates of the stock in question issued to him, by delay in

offering to pay the indebtedness of Russell to the corporation which constituted a lien thereon.

It was claimed, on the argument of the case below, that a purchaser of stock at execution sale is bound to pay or tender the amount of any debt which constitutes a lien thereon in favor of the corporation within the fourteen days mentioned in § *4479, Comp. L. p. 1214.* But clearly this is not so, for if the debt is not due, as may often be the case, the corporation can not be compelled to accept.

Upon leaving a certified copy of the execution, and the return thereon, with the proper officer of the corporation, in compliance with said § *4479, Comp. L.* complainant became the owner of the interest in the corporation, which, prior to that time, had belonged to Russell.

He took the position which Russell, by reason of the ownership of this interest in the corporation, had sustained to it. In other words, he stepped into Russell's shoes.

And hence, as Russell's right to redeem the stock in question, by payment of the debt which constituted a lien thereon, was not subject to be lost or destroyed by delay, neither was complainant's right as Russell's successor.

If defendants desired to avail themselves of the lien to cut off complainant's right to redeem, the duty of action rested upon them. So long as they delayed to foreclose, so long could complainant safely delay payment, and offer of payment.

*Walker & Kent,* for defendant.

1. If complainant is entitled to any relief, it is difficult to see what it is. The stock which he seeks has been virtually divided among so many innocent holders that it can not be traced and recovered.

At least nothing of the kind could be done in this suit, where none of these holders are parties. To issue more stock may not be in the power of the company. In case any relief can be granted, certainly complainant must pay

the full amount of Russel's indebtedness to defendant at the time of the levy upon the stock.

2. Russel had no title to the stock which complainant, with knowledge of the assignment of LeRoy, could acquire under the levy and sale.

It is provided in the act under which defendant was organized — *Comp. L.* § *1814* — that the stock shall be transferred only on the books of the company.

Under provisions in substance exactly like this it is held that transfers, not recorded in the manner provided, convey a title either legal or equitable which is good against all parties having notice. — *3 How. 511; 21 Vt. 353; 1 Sumner, 147; 26 Conn. 144; 10 Pick. 454; 34 N. Y. 30; 2 Beasley, N. J. 24; 31 Conn. 25; 22 Wend. 362; 2 Cow. 770.*

It is provided in a general provision as to corporations — *Comp. L.* § *2149* — that transfers of stock shall not be valid, "except between the parties thereto," until entered upon the books of the company, and it is contended that this provision makes absolutely void all transfers not on the books as to attaching creditors. It may well be doubted whether this general provision has any application to a company organized under a law which contains a special provision upon this very subject. But if it has, its effect is to enlarge, and not in any way to restrict the effect of a transfer.

Its design was to engraft into the statute the more liberal rule of the New York courts, holding that a transfer of a certificate conveys the entire legal title as between the parties rather than the rule adopted by the earlier cases in Connecticut. — *22 Wend. 362; 2 Cow. 770; 3 Conn. 544; 5 Id. 246; 6 Id. 552; 9 Id. 487.*

The provision as to the entry on the books of the corporation of a transfer of stock is held to be necessary only for the benefit and security of the company and not to the security of the holder's title. — *4 Mich. 471; 22 Wend. 362; 2 Cow. 770.*

3. If Russel had any interest in the stock in question at the time of the levy, complainant failed to acquire it by his proceedings.

Defendant had a lien on the stock for the amount due from Russel. — *Comp. L. § 1814.* The corporation could not have been required to transfer the stock until the payment of this indebtedness. — *2 Wheat. 390.*

There is no provision in the statute providing a method of ascertaining the amount of such a lien, nor in any way indicating an intention to provide for such a case, and it may well be doubted whether the statute should be con-. strued to extend to stock on which the company has a lien.

But however this may be, the purchaser must pay, or offer to pay, the lien, and he must do it, too, within the fourteen days after the sale, in which the statute requires him to demand a transfer. — *Comp. L. § 4479.*

As the sale of stock on execution was unknown at common law, and is given only by statute, the method prescribed must be strictly followed. The exhibition of a copy of the execution, and return, and the demand for a transfer, must be within the fourteen days or the entire proceedings are void. But when the purchaser knows that there is a lien upon the stock, it is useless to demand a transfer without offering to pay the lien. His demand, in order to avail, must be such as the corporation is bound to comply with, otherwise it can be of no validity.

4. If complainant acquired any title by his purchase, it was lost by his delay to enforce it, and by the subsequent proceedings of defendant to enforce its lien.

*a.* The proceedings of defendant for a forfeiture and sale of Russel's stock conformed strictly to the statute, and no objection can be made, except that the stock was purchased for the use of defendant. No special trust was imposed upon defendant and he had the right to bid it in.

The case is similar to the sale of personal property under a chattel mortgage, and it is the long established practice

for a mortgagee at such sale to bid in the property in his own name where there is no other way of saving his debt. The same practice has become common in the sales of stock for debts due the corporation or assessments on the stock. The practice is beneficial in both cases. The practice as to mortgages of real estate grew up before the passage of the statutes authorizing it. The evil can be no greater where it is not authorized by statute than where it is.

Nor is there any rule of law or any series of decisions that we are aware of to prevent this court from establishing the law in accordance with the practice heretofore existing. *27 N. Y. 564; 40 Barb. 179; 1 Caines Cases, 14—19; 3 Id. 3—19; 1 Paige, 73.*

*b.* The purchase of the stock owned by Russel, by Rabbineau for the use of the company, and the issue of the certificate for this stock to the president of the company, at least conveyed the legal title thereto, and if voidable was not void.

It could have been set aside only by a bill filed for this purpose by the complainant within a reasonable time. — *27 N. Y. 567; 5 Johns. 47; 14 Id. 407; 2 Cow. 196 — 238; 5 Vesey, Sumner's Ed. 878 and note a; 3 Vesey, 740 and note a; 3 Stock. 16; 2 Beasely, 228; 4 Min. 25; 16 Md. 456; 29 Ala. 367; 1 Met. (Ky.) 602; 21 Ind. 80.*

The usual rule must then apply that the party seeking to set aside such a sale must begin his suit within a time under all the circumstances of the case reasonable.

Certainly four years and a half, under the circumstances of this case can not be considered reasonable.

*c.* So far as the corporation is concerned, Russel, in whose name the stock stood at the time of the sale, was its owner, and his assent to the sale made it good if otherwise bad. Defendant had good reason to believe that complainant had abandoned all his claim to the stock. At any rate, the law seems to be settled that a corporation is bound to look only to its own books to find out who are

its stockholders. The very purpose of the rule requiring transfers on their books, is that the books may furnish a complete record of their stockholders.—*38 Eng. L. & Eq. 444; 2 Cow. 770; 6 Hill, 579; 2 Conn. 579; 2 Barb. Sup. Ct. 294; 5 Id. 210.*

The equities of this case are all against complainant. He purchased his interest in said stock for almost nothing at a time when it was not worth the lien on it, neglected to assume the responsibilities of a stockholder at the time, allowed the stock to pass into the hands of innocent holders, and now, after more than four years delay, seeks to avail himself of the profits derived from the labor and capital of others.

GRAVES J.

The defendant is a corporation organized under the act of February 5, 1853, authorizing the formation of corporations for manufacturing and other purposes. On the 21st of November, 1861, there were standing on its books, in the name of George B. Russell, 480 shares of stock. On the 27th of the same month he was largely insolvent, and made to Henry H. Le Roy a general assignment for the benefit of creditors. At some time before this, however, he had assigned to Julius A. Austin 200 shares of said stock, and to Philo Parsons the remaining 280 shares, as security for debts which he owed them, and which have never been paid. It does not appear that these transfers were entered on the books of the company, but it is admitted that the corporation had notice of them before the 21st of January, 1862. Before the assignment to Le Roy, an indebtedness had accrued from Russell to the company for a large amount, and alleged by the latter to exceed $9,000, for which the company claimed to have and retain a lien upon the stock. On the 11th of November, 1861, Henry W. Newberry and Walter C. Newberry, as executors of the last will of Oliver Newberry, obtained a judgment in the Circuit

Court for the County of Wayne against Russell for $13,-400.14 damages and costs, and on the 21st of November, 1861, caused an execution to be issued on the judgment to the sheriff of Wayne County, returnable on the first Monday of February following.

On the 21st of January, 1862, the sheriff called on the secretary and treasurer of the corporation, and received from him a certificate that there was standing on the books of the company, in the name of Russell, 480 shares of stock, against which the company had a lien for indebtedness of Russell to the company of about $9,000. The sheriff thereupon levied the execution on said stock, and took the steps required by the statute to effectuate a formal levy on property of that description. On the 17th of February, 1862, the sheriff, after regular notice, sold the stock pursuant to the levy to the complainant for $5, and, on the first day of March following, left with the proper officer a copy of the execution and the requisite return, and at the same time the complainant demanded of said officer a certificate of the shares of stock so purchased, and offered to pay the fees therefor, and for recording the shares, but the officer refused to give any such certificate. At the time of the purchase by complainant, he had no notice of the transfer by Russell to any one, except by assignment to Le Roy. On the 3d of April, 1862, the directors of the company ordered the treasurer to notify Russell that unless his indebtedness to the company was paid within sixty days after service of the notice, the company would advertise and sell the stock according to the act under which the corporation was organized. Such notice was accordingly given on the 5th of April, 1862. Russell failing to make payment within the time, the directors, on the 18th of June, 1862, resolved that the stock should be sold at public auction, at the office of the company, after giving thirty days previous notice by publication in the Detroit Daily Tribune, and that the treasurer should bid not to exceed eighty cents

on the dollar of the nominal par value of said stock. A notice was accordingly published in said paper, for the sale of the stock on the 24th day of July, 1862, at 12 o'clock at noon, at the office of the secretary of the corporation, and at such time and place the directors offered the stock at public auction, and it was struck off to the treasurer for the use of the company at eighty cents on the dollar of the par value, that being the highest sum bid, and he being the highest bidder; and shortly after, a certificate for the stock was issued to the President of the company.

This sale was made in good faith, and without collusion with Russell, but with his knowledge and assent, and the price mentioned was more than the stock was then actually worth. At the time last mentioned the whole amount of stock was $69,000, and the par value was $25 per share. Soon after said proceeding, the stock so purchased, amounting to $12,000, was cancelled, and in about a year thereafter a sufficient additional amount was purchased and cancelled to reduce the whole stock to $53,550. In 1864 the stock was raised to $100,000 by dividends of stock and new issues, when the old stockholders sold to persons from a distance $50,500 of said $100,000.

Subsequently thereto, and before July 27th, 1866, there were many transfers, and most of the stock passed into the hands of parties who had purchased after the Russell stock was cancelled. On the 20th of July, 1865, a dividend of fifteen per cent. was made, and on the 11th of June, 1866, another of twenty per cent. but both of them were in stock.

The dividends before mentioned are all which have been made.

On the 27th of July, 1866, the complainant demanded of the proper officer of the company an account of the stock bid off on the execution in February, 1862, of dividends, increase and profits on the same, and the issue to him of a certificate of said stock, and then offered to pay any lawful lien the company had thereon.

This request being refused, the present bill was filed. It is claimed, on the part of the complainant, that at the time of the levy and sale in 1862, the defendant in the execution, Russell, had an interest in the stock, which was subject to seizure and sale under the execution, notwithstanding any lien of the company, and which was susceptible of discrimination and protection, without injury to the interests of the company, or embarrassment to its operations; that by the purchase on the execution sale in February, 1862, the complainant acquired a perfect title to the interest of Russell in the stock, notwithstanding his transfer to Austin and Parsons, and his subsequent general assignment for the benefit of creditors; that the asserted foreclosure of the lien of the company was ineffectual, for the reason that the corporation could not become a purchaser at such sale, and that the complainant has not lost his right to have certificates of the stock issued to him by his delay in offering to discharge the lien upon the stock held by the corporation.

The defendant insists that the stock sought by complainant has been so disposed of that it can not be traced and recovered; but if that could be done under any circumstances, the present suit is ineffectual for that purpose, since none of the innocent holders are parties, and the power of the company to issue more stock is not shown; that Russell had no title which the complainant, with knowledge of the assignment to Le Roy, could acquire under the execution; but that if he had, the proceedings by complainant were not such as to give him any title, as he failed to discharge or offer to discharge the defendants' lien within the time required by law, that is, fourteen days; that if the complainant acquired any title by his purchase, it was lost by his delay to perfect it, and by the subsequent proceedings of defendant to enforce its lien; that as the complainant purchased for a nominal sum when the stock was not worth the amount of defendant's lien, and neglected to assume the responsibilities of a stockholder, and

allowed the stock to pass into the hands of innocent holders without evincing any purpose to insist upon his right as purchaser for more than four years, and until after the stock was much increased in value, the equities are all against him.

The view I take of this case makes it unnecessary to discuss several of the most important questions argued at the bar, although the foregoing summary has been thought advisable in order to obtain a complete understanding of the controversy.

The sixteenth section of the act under which the company was organized, among other things, provides that the "corporation shall at all times have a lien upon the stock or property of its members invested therein for all the debts due from them to such corporation, which may be enforced by advertisement and sale in the manner" provided in the act for selling delinquent stock. The law in question is a public act, and all are charged with knowledge of its provisions. When the execution was issued and levied, and when the sale was made to the complainant by the sheriff, in 1862, Russell, the execution debtor, was apparently a member and stockholder of the corporation. He was then, and for some time after, so treated by the company. He has been so treated by the complainant. There were standing on the books in his name 480 shares of stock, which the company had not recognized as belonging to any other person. When the execution was issued, Russell was largely indebted to the company. This indebtedness continued until long after the sale on execution, and may possibly continue still. At the time of the levy the sheriff was notified of such indebtedness, and that the defendant claimed a lien on the stock therefor, and on the first of March, 1862, the company refused to give to the complainant a certificate of the shares purchased on the execution, and insisted upon the lien. It can not be doubted that the defendant possessed a lien upon the stock to the extent of

its debt against Russell, and if it has ever been discharged, it must have been by the sale of the stock and attendant proceedings, at the instance of the company and with the assent of Russell, in the spring and summer of 1862. Certainly the complainant has never discharged it.

If these proceedings were valid, then the lien was discharged thereby, and the same act that discharged it extinguished the right of complainant, since his purchase was necessarily subject to that lien, and to those proceedings appointed by law for the satisfaction of it.

The statutory lien upon the stock possessed by the corporation was neither displaced, overreached or impaired by the institution of the lien, under the execution, or by the sale of the stock upon it; and the proceedings of the complainant were not carried far enough to give him the right to require certificates of the stock, or to confer upon him the privileges, or cast upon him the burdens and liabilities of a stockholder. He took several steps, but did not take the final one. He neither paid or offered to pay the lien of the company.

If the proceedings in 1862, to produce satisfaction of the lien, were invalid, then the right of the company still remained.

It is admitted that when the sale on the execution took place the amount of the lien exceeded the value of the stock.

This being so, there was nothing at that time to be transferred by the company to the complainant, except upon the payment by the latter of the claim of the former, and this, as already stated, was not offered.

The demand, therefore, of certificates, which was then made, was wholly ineffectual.

The company could not be required to furnish the complainant with the *indicia* of absolute or qualified ownership of the whole or any part of the stock. The lien covered the whole and every portion of it, and the only course

open to complainant was to satisfy the debt of the com-
pany.    The defendant was justified in reposing upon the
right which it possessed under the statute.    It held the
prior lien.    That lien was more than equal to the value of
the property.    It held the only possession of which the
subject of the lien was susceptible, and no right was vested
in complainant to disturb that possession without satisfying
the lien.    Upon this ground, therefore, without stating
others, I think the complainant, at the time of his pur-
chase, was neither entitled to certificates of the Russell
stock, nor to any transfer of the same to him by the defend-
ant.    Whatever, if anything, the complainant obtained at
the time, by his purchase under the execution, it was cer-
tainly subordinate to the right of the defendant under the
lien, and could only be made completely available by dis-
charging such lien.

By the general law under which the defendant was or-
ganized, each share of stock is entitled to a vote; the trans-
fers of stock must be made on the books of the company,
and the stockholders are individually liable for all labor per-
formed for the corporation.

The design of these provisions would be defeated if the
purchaser, on execution of stock, bound by a lien of the
corporation, could retain indefinitely all the advantages of
ownership without being subjected to any of the burdens,
risks or liabilities of an actual stockholder; and it would,
therefore, seem reasonable that he should be required to be
active in taking all the steps necessary to become entitled
to the position of stockholder.

The defendant insists that it was incumbent on com-
plainant to discharge, or at least offer to discharge the lien,
within fourteen days from the sale on the execution.

The complainant denies this, and maintains in substance
that he acquired, by his purchase, a right to redeem by
payment of the lien, and that such right was and is inca-
pable of being lost or destroyed by any delay; and, at the

same time, he maintains that the company could not enforce the lien by becoming purchaser of the stock. If it was competent for the company to purchase, then the proceeding adopted in order to enforce the lien was valid, and the complainant is concluded thereby.

If, however, the company was disabled from purchasing, and no delay of the complainant could impair his right, it would follow that the lien might continue, and the stock be tied up indefinitely, since there would be no adequate means for the company to compel satisfaction. If this view should be adopted, it would extensively impair the interests and embarrass the operations of corporations organized under the law in question, if it did not tend to disorganize them.

It must be remembered that the property-right of the party as a claimant of an interest in the stock is not the only right to be attended to; but the right of the corporation and actual stockholders that the ownership of stock shall involve the duties and liabilities of corporate membership is also to be kept in view.

This circumstance is important and should have its proper influence.

Considering the nature of this case, and in its equitable aspect, I think the complainant was required to be active and diligent; and that he could not stop short of offering to pay the debt due to the company and still retain the right to pay it or not at any time thereafter as the company should be successful or unsuccessful; that he could not for an indefinite period preserve his middle position and be all the time entitled to ask or not ask the aid of the court to help him, as the one course or the other should ultimately turn out to be for his interest; and much more, that he could not lie by while the affairs of the company to his knowledge were undergoing such changes as would make the interests of the company and the rights of new stockholders incompatible with the enforcement of his claim, and still be entitled to ask the court to aid him in such enforcement.

Whether or not, therefore, he was required to discharge the lien in fourteen days from the sale on execution, it appears to me that, in order to ask the assistance of equity, he should have offered satisfaction within such reasonable time as the circumstances of the case suggested. Did he do so?

At the time of the execution sale, as already stated, the stock was worth less than the amount of the lien, and he made no offer of payment. The company advertised the stock for sale to satisfy the lien, pursuant to a public statute, and it was struck off in July, 1862, for eighty cents on the dollar, which was above its value, and the complainant remained silent and inactive.

The company adopted measures to cancel this and other stock, and still nothing was heard from complainant. Finally a large amount of new stock was issued; the capital was enlarged to $100,000; and very extensive changes in the ownership of the stock from time to time made; and nevertheless the complainant continued silent until July, 1866, a period of more than four years, when he offered for the first time to pay any lawful lien held by the company. Under these circumstances and after such lapse of time the complainant asks the aid of a court of equity, in order to give to the title or right he acquired by his purchase on the execution, whatever it was, the effect it would have had, if he had discharged or offered to discharge the lien of the company at or soon after his purchase.

I think, however, that his long and unexplained silence and delay, the fact that the stock was worth less than the amount of the lien, that the sum bid by complainant was a mere nominal one, and that his course, coupled with these and other circumstances, was such as to lead the company to suppose that he did not intend to discharge the lien but meant to abandon his purchase; the consequent changes wrought in the affairs of the company, the suppression of the stock in question, the creation of new stock, the enlargement of the capital and introduction of the new

interests, ought now to be deemed sufficient to deprive the complainant of the right to the interference of a court of equity. — *McCready v. Rumsey, Pres't of Suffolk Bk. 6 Duer, 574; Brent v. Bank of Washington, 10 Pet. 596; Tash v. Adams, 10 Cush. 252; Fuller v. Inhabitants of Melrose, 1 Allen, 166; Inhabitants of Plymouth v. Russell Mills, 7 Id. 438; Pendergast v. Turton, 1 Young and C. 98; Reimers v. Druce, 23 Beav. 145; Nicholson v. Hooper, 4 Myl. and C. 180; Parrott v. Palmer, 3 Myl. and K. 632, 640; Duke of Leeds v. Earl of Amherst, 2 Phil. 117; Shapley v. Rangeley, 1 Wood. and M. 213; Manufacturers and Traders Bk. v. Hazard, 30 N. Y. 226.*

As this view disposes of the case, it is unnecessary to inquire whether the stock, as subject to the lien of the corporation could be seized and sold on execution, or whether, if it could be, such lien would have to be paid in fourteen days, or whether the assignments to Austin, Parsons and LeRoy or either of them could be set up by the company against the claim of the complainant, or whether the proceedings to enforce the lien were valid, or to decide upon the construction of the statutes as to transfers on the corporation books.

It is sufficient that the complainant could not invoke the aid of the court to invest him with the absolute right to the stock without his discharging the lien; that under the most favorable view for him he was bound to exercise reasonable diligence in discharging that lien, and in the pursuit of his claim, and required to avoid a course naturally leading the company to adopt measures wholly inconsistent with the existence of his right, and which would make the establishment of his claim, in a very high degree, injurious to the interests of the present actual stockholders.

I am, therefore, of opinion that the decree of the court below should be affirmed, with costs.

COOLEY CH. J.

I agree in the result to which my brother, Graves, has arrived; but I put my concurrence on the ground solely

that, when Newberry's levy was made, Russell had no interest in the stock levied upon, and the levy was, therefore, entirely ineffectual.    The clause in the statute on which complainant relies — that transfers of stock shall not be valid, except as between the parties thereto, until duly entered upon the books of the corporation — is a clause for the protection of parties having equities; and without inquiring whether it can be applied in any case to the protection of other assignees who take assignments with knowledge of a prior transfer, it is very clear, I think, that a judgment creditor who buys with full knowledge can get, by his levy and purchase, nothing that the debtor himself could not claim.    I, therefore, express no opinion upon the questions discussed by my brother, Graves.

CAMPBELL J.

I concur with my brother, Graves, in holding that, if complainant obtained any interest in the stock, under the execution proceedings, he has become equitably estopped from insisting upon it.    And I agree in the reasons which have been declared for that opinion.

But I am also of opinion with the Chief Justice, that no title passed under the execution sale, as Russell's rights had been already divested.

CHRISTIANCY J. did not sit.