# JULY TERM, 1873, AT LANSING.

---

Frederick W. Carlisle v. The Saginaw Valley & St. Louis Railroad Company.

*Railroads: Corporations: Subscription to stock: Statute construed: By-laws :*
*Estoppel.* Under the railroad law of 1871 (*Comp. L. 1871,* § *2405*) subscriptions
to capital stock of a railroad corporation could only be made "in the manner
to be provided by its by-laws." A subscription made before any by-laws were
adopted gave no rights to either party; and where there had been nothing
done to create an estoppel, the subscriber was held not bound by a by-law
made afterwards and adopting his subscription.

*Heard April 10.    Decided July 11.*

Error to Saginaw Circuit.

*Wisner & Draper,* for plaintiff in error.

*Gaylord & Hanchett,* for defendant in error.

CAMPBELL, J.

Carlisle, the plaintiff in error, is sued as a stockholder
for assessments on stock, and defends on two grounds:
*first,* that he never became a stockholder; and, *second,* that
by an arrangement with another company, the defendant in
error made stipulations depriving itself of the power of
putting its terminus in East Saginaw, where it was to have
been placed by its articles, and so destroying the chief con-
sideration for the subscriptions made in that city.

The agreement in question was made with the Jackson,
Lansing & Saginaw railroad, for the use of the track of
the latter company from the Tittabawassee river to the East
Saginaw depot (which was in Saginaw, and opposite the

city of East Saginaw), and for the use of the depots in that section. And the clause complained of is a stipulation not to construct or maintain any other track into the city of Saginaw during ten years. It is claimed this precludes the defendant from crossing the river so as to connect with the city of East Saginaw. But by a previous clause in the contract it had been stipulated that defendant might put in the necessary switches and turn the track of the other road "at any point between Farley street and East Saginaw station, for the purpose of crossing Saginaw river." The track to which defendant was to be confined included this proposed crossing as plainly as any other part of the track. The objection therefore is groundless, and we need not consider whether it would have had any effect had it been well founded.

But it is claimed that Carlisle never became a stockholder, because his subscription was not made in the manner authorized by the statute. As the case is presented, there are none of the questions raised which sometimes create estoppels by mutual dealings; and the point to be settled is simply whether his subscription was in such manner as to create the relation of share-holder.

The company was organized after the passage of the law of 1871, which changes the former method of obtaining subscriptions. By the old law, all stock not subscribed in the original articles, must be subscribed by signing the books opened by commissioners, kept in such places, and opened after such notice, as a majority of them should direct, and kept open until all the stock was subscribed. In case more than the whole amount was subscribed they were to equalize the shares.

The law of 1871, instead of continuing this mode of subscription, declares that " the persons who have subscribed such articles, and all other persons who shall, from time to time thereafter, subscribe to or become the holders of the capital stock of said corporation, *in the manner to be provided by its by-laws,* shall be a body corporate," etc.

CARLISLE *v.* SAGINAW VALLEY & ST. LOUIS RAILROAD CO.

The articles of the company were drawn a few days after the law of 1871 was passed, and, in ignorance of the change, named commissioners of subscription; but did not go further in defining their functions. The day after the articles were dated, and the directors organized, they procured blank books for subscription, and gave them to the commissioners named. A majority of the commissioners, without holding a formal meeting, agreed on a form of subscription, and had it copied into each book. The president, who was one of the commissioners, took one of the books to circulate in East Saginaw. No by-laws had been adopted, and none were afterwards adopted until after the plaintiff's subscription was made; but in the interim (and whether before or after he subscribed, does not appear), the directors requested the commissioners to use diligence in causing the balance of the stock to be taken.

On the first of August, 1871, the following by-law was adopted:

"The capital stock of the company, which is not taken and subscribed for on the articles of association, may be subscribed for and taken in shares of one hundred dollars each, in the following form: We, the undersigned, hereby subscribe and take the number of shares of one hundred dollars each, of the capital stock of the Saginaw Valley & St. Louis railroad company, set opposite our respective names, to aid in the construction of said railroad, and we hereby promise to pay to the treasurer of said company the amount of said shares in such assessments and at such times as the board of directors may direct and require; and all subscriptions in the above form which have heretofore or shall be hereafter made by any person or persons, and delivered to the secretary or directors, shall be deemed valid and binding subscriptions to the capital stock of this company."

The form is the one used by the commissioners. A by-law cannot bind any one not already a member of the corporation, and it cannot be claimed that such could have

been the force of this by-law. If it could have any bearing on past action, it could only be by way of acceptance of some offer not previously binding on any one as a subscription.    And it can only operate in the present case, upon the principle that the subscription made before was a standing offer.

No person can obtain rights of membership in a corporation except in compliance with its charter or governing law, and if that prescribes any conditions or special methods of becoming a member, the law is imperative.    There may be cases of mutual dealing which will estop both parties, but no contract or subscription can be valid if not conforming to the statute.    Sometimes the disposal of unsubscribed stock has been left to the unrestricted discretion of the company, but this has not been done in this state, nor generally.    The danger of abuse and unfairness in such disposition is great, and has led to many gross frauds. Uniformity of action has been secured in various ways. Under the former general law all subscriptions were required to be made through commissioners, who had no power of discriminating between parties standing on a similar footing.    Requiring all subscriptions to be made under by-laws would serve a similar purpose.    And both were undoubtedly designed to prevent any difficulty in determining whether a person was or was not entitled to the rights, and subject to the responsibility, of a subscriber.    Few questions have led to more litigation than this, where personal liability is set up, as well as where rights have become valuable.    In *Newberry v. Detroit & Lake Superior Iron Co., 17 Mich., 141,* some questions arose illustrating the importance of such regulations.

Where persons subscribe for a future organization, their mutual agreements for a common enterprise may operate as mutual considerations till the enterprise becomes organized, and thereby the common interest is carried into its proposed form.    But where the corporation is already in existence, a stock subscription is a transaction between the sub-

scriber and the company, and the obligation of one can only be sustained by the corresponding obligation of the other. If both are not bound, neither is bound, and the transaction is a nullity.—See *Ang. & A. on Corp.*, §§ *523, 527*. The doctrine is briefly stated in the latter section as follows: "It seems that the criterion of the liability of a subscriber to stock in a corporation, is whether any act has been done by which *the corporation has been forced to receive the subscriber.*" And this is the accepted doctrine everywhere.

An offer may perhaps be made subject to future acceptance, where the charter does not require the subscription to be made otherwise. But where the manner of subscribing is laid down, it is difficult to find room for any other. However this may be, it cannot be maintained that a subscription is to stand as an open offer, unless it was so understood and intended. In the present case such an intention cannot be possible, and is not warranted by the finding. The form of the subscription is a present and absolute agreement, and not a promise or proposal to take stock in the future. It is the same form which the by-law itself adopts for future absolute subscriptions, and will bear no other meaning. It was made supposing the commissioners were acting under the old law whereby their permitting a party to subscribe in their books bound the company. They were all under a mistake, but the intent and understanding of the parties must determine whether they contracted absolutely or conditionally, and there can be no room for doubt on this question.

In *Shurtz v. The Schoolcraft & Three Rivers Railroad Company, 9 Mich. R., 269,* where the irregularity in the subscription consisted in the direct dealings being with the directors instead of commissioners, and where there was a distinct engagement with them through their agent appointed with such authority as they could give him, it was held the subscription was void, because none but the commissioners could receive subscriptions, and that the illegality

could not be cured by promises to pay. The commissioners could not be compelled to respect any such subscription.

In *Howard's Case, L. R., 1. Ch. Ap., 561,* it was held that where the power of allotting shares was in the directors, they could not delegate that power. In that case a share-holder accepted certain shares conditionally, and the board of directors, instead of assenting to the conditions, resolved that it should be left to the discretion of two of their board and the manager, by whom the stock was allotted to him and his name was placed on the list. But the vice chancellor and the appellate court held, without dissent, that he never was a holder of those shares, and that the action to make him such could only have been taken by the board of directors acting officially.

The principle of those cases governs this. The legislature having seen fit, for satisfactory reasons, to declare that the members of the corporation should consist of the original subscribers, and of such other persons as should subscribe or become holders " in the manner to be provided by its by-laws," it must follow that until by-laws should be enacted, there could be no further subscriptions.

The judgment below must be reversed, and judgment entered for the plaintiff in error on the finding, with costs of all the courts.

The other Justices concurred.