## Charles T. Parker v. The Northern Central Michigan Railroad Company.

*Railroads: Subscriptions: Corporate existence.* In an action upon a subscription to a railroad company which recognizes the corporation, the existence of the company cannot be disputed, and questions of the regularity of its organization are immaterial.

*Subscriptions to stock: Consideration.* Subscriptions to stock are only binding upon the subscribers when they are so made as to bind the company; and as the statute creates no obligation on the corporation, except upon subscriptions regularly made, no others can be enforced unless they were made upon some actual consideration or agreement binding the company.

*Subscriptions: Consideration.* The subscription sued upon in this case, not having been taken by commissioners as required by the statute, cannot be supported except upon some positive consideration proceeding from the company.

*Declaration: Subscriptions: Contracts: Consideration: Cause of action.* An averment as to a subscription not within the statute, that defendant being desirous that the company should proceed in the building of its road, etc., in consideration thereof did subscribe and sign such subscription, setting it out, in the absence of any averment that the company

undertook to build the road in response to the subscription or in reliance on it, or that in building it afterwards they did it in such reliance, or that the company or its agents ever prepared, proposed or sanctioned such subscription, or ever received, accepted or in any way recognized it, fails to allege any consideration for the promise declared upon, and therein falls short of stating a binding contract, or making out a cause of action.

*Subscription: Acceptance: Ownership: Possession: Delivery.* In an action in the name of the company for the use and benefit of a third person, upon a subscription thus declared upon, where it appeared that the paper was originally got up by a voluntary movement among citizens, and its actual delivery to, or acceptance by the company was not shown, it is error to rule that the production of the instrument at the trial is evidence of its delivery to the plaintiff.

*Heard October 19 and 20.    Decided November 2.*

Error to Calhoun Circuit.

*Brown & Patterson* and *A. M. Culver,* for plaintiff in error.

*Rienzi Loud,* for defendant in error.

CAMPBELL, J:

Parker was sued on a subscription for stock of the Northern Central Michigan Railroad Company. The subscription was made December 27, 1869, in the following terms:

"We, the undersigned, in consideration that the Northern Central Michigan Railroad Company shall proceed in the building of said road, hereby agree to pay to said company (for which we shall have paid up stock of the company), the amount set to our names, to be paid twenty per cent. a month, beginning when the work shall have been commenced." The amount was two hundred dollars. The declaration avers that work was commenced August 1, 1871, and afterwards completed; and that in April, 1872, stock was tendered, and that plaintiff below was ready and willing to perform.

Several questions are presented on the record, the most important of which relate to the nature and consideration of this instrument.

Some points are made upon the preliminary steps for the organization of the company, but we do not regard them as

important on this record. The subscription, if valid other-
wise, recognizes the corporation, and its existence cannot be
disputed.

The principal inquiry is, whether a valid contract is
alleged and proven. To establish this it is necessary to
show not only a promise by Parker, but a meeting of minds
of both parties and a consideration valid in law to maintain
the promise.

Under the railroad law in force when this company was
organized, the original stock subscriptions were to be made
upon books opened by commissioners, and a subscription
made in the manner pointed out by law gave the subscribers
such a right to stock as bound the company, and furnished
a consideration for the undertaking of the parties signing.
But it has been held uniformly that the subscribers were
only bound when the company was bound, and that no
unilateral subscription could be upheld. And as the statute
did not create any obligation on the corporation, unless upon
subscriptions regularly made, no others could be enforced
unless they were made upon some actual consideration or
agreement binding the company.—See *Carlisle v. Saginaw
Valley & St. Louis R. R. Co., 27 Mich. R., 315 ; Shurtz
v. Schoolcraft & Three ·Rivers R. R. Co., 9 Mich. R.,
269.*

It appears in the present case that the subscription sued
upon was not taken by commissioners. It must, therefore,
if valid, rest on some positive consideration proceeding from
the company. And the question arises whether this is
alleged or proved.

Upon considering the declaration, which was amended
after one jury had been sworn and discharged, and on which
there has since been another voluntary nonsuit upon a trial
before the one now under review, we may assume it repres-
sents the case on which plaintiff below was prepared to rely
as to what could be established. And we find the declara-
tion and the proof equally defective in the same direction.

The averments in the declaration fail entirely to make

33 MICH.—4.

out any contract, and merely show a subscription or promise not alleged to have been within the statute. It alleges merely that Parker signed his name to this paper; and this, with the consideration alleged, is set forth as follows: "that defendant, being desirous that said company should proceed in the building of its road from Jonesville to Albion in this state, in consideration thereof, by the name and initials of C. T. Parker, did subscribe and sign his name to the following agreement."

This may, perhaps, by a liberal construction, indicate that the building of the road was to be the consideration for the promise, as mentioned in the first part of the subscription. Whether that would suffice or not might depend somewhat on whether the company were already bound to build it. But there is no averment that they undertook to build it in response to the subscription, or in reliance on it, directly or indirectly, or that in building it afterwards they did it in such reliance.

Neither is it averred that this subscription was got up or signed in response to any proposition of the company, nor that the company or its agents ever prepared or sanctioned it. There is no averment directly or inferentially authorizing the conclusion that it was ever delivered to or accepted by, or in any way recognized by the company or any authorized agent, at any time whatever.

We have then no more than the signing of a paper on the one side and the building of a road on the other, but nothing to show that the one was in any way caused by or dependent on the other. There is an averment of a tender of stock, which is not, however, connected with any statement that an undertaking to furnish it formed the consideration of the contract or any part of it, and which tender, whether made or ready to be made, was repudiated on the trial as unnecessary to be shown, and as aside from the actual consideration.

It is very clear that there could be no contract for stock or any thing else unless the company was bound as well as

PARKER *v.* NORTHERN CENTRAL MICHIGAN R. R. CO.

Parker. The subscription as alleged is not set forth as an offer, but as a present undertaking, and is declared on as an agreement from its date. But whether complete or to be made complete by subsequent acceptance, one or the other must be alleged and must be proved. The objection was pressed on the trial very strenuously that the promise was voluntary, but no amendment was made to obviate it.

Upon inspecting the proofs they indicate very plainly the same defect. There is not any evidence of a single resolution or other act of the company, or its board, authorizing the subscription or accepting it as a contract by which they were to be bound. And there is no legal evidence that we have discovered that it was ever delivered to the company or acted upon. Its history seems to be this, as far as it can be inferred.

The subscriptions were got up by a volunteer movement among citizens, stimulated by persons interested and who in some instances may have been officers, but who did not act as agents, or in an official capacity.

William H. Brockway was the only important witness for the company, and no attempt was made on his direct examination to trace the subscriptions into the possession of the company, or to show any corporate recognition of them. He was cross-examined, and although he gives some impressions that the papers at some time or other came into the hands of the board or some of the officers, there is nothing which amounts to proof that the board ever received or accepted them. He seems in June, 1871, to have obtained an assignment of all the floating assets of the company and claims this subscription among the rest. This is all that appears.

The plaintiff did not claim to have shown any actual delivery or acceptance, but relied upon the presumption arising from its possession at the trial. The court, upon this question, charged the jury as follows: "I advise you further, that the subscription book, being produced here by the plaintiff, is evidence that it was delivered to the plaintiff, and

conclusive in the absence of evidence that it was wrongfully obtained by the plaintiff."

As the suit appeared to have been brought by Brockway, the plaintiff's name being used for his benefit, the incorrectness of such a ruling in regard to such a paper is manifest. The necessity of proving the mutuality of the agreement made it necessary to show distinctly when and how the company was bound, and possession by the corporation itself long after suit commenced would have been of no avail to raise a presumption of seasonable liability. And when it was shown the paper was originally got up and held by strangers, it became necessary to account for it and trace it.

As both declaration and proof are fatally defective on the very existence of an agreement, it would be improper to discuss the important and complicated questions which would arise if its complete execution had been made out.

The judgment must be reversed, with costs, and a new trial granted.

The other Justices concurred.