PENINSULA LEASING CO. *v.* CODY.

1. CORPORATIONS — SUBSCRIPTION TO STOCK—SALES — STATUTE OF FRAUDS.

The issuance of stock by subscription is not a sale within the statute of frauds.

2. SAME—CALLS—NOTICE.

It is a question of fact whether a subscriber to stock of a corporation, whose by-laws specify no form of notice, had sufficient notice of calls which he was requested and refused to pay, making no objection to the form of notice; the action being for the amount thereof and not to forfeit or sell his stock.

3. Same—Method of Subscription.

It is the general rule that no one can obtain the rights of a member in a corporation except in compliance with the governing law.

4. Same—Estoppel.

Where the several stockholders of a company agree to organize a second corporation, and the shares were allotted proportionately to the knowledge of all the parties, and the subscriber paid calls for a portion of his allotment, he is properly held to be a stockholder liable for his entire proportion of the stock.

Error to Kent; McDonald, J. Submitted April 18, 1910. (Docket No. 27.) Decided June 6, 1910.

Assumpsit by the Peninsula Leasing Company against Darwin D. Cody upon a subscription to the capital stock of plaintiff corporation. A judgment for plaintiff is reviewed by defendant on writ of error. Affirmed.

*Crane & Norris*, for appellant.

*Thompson & Temple*, for appellee.

The plaintiff is a Michigan corporation, organized under the provisions of 2 Comp. Laws, chap. 187, as amended. The action is assumpsit, brought to recover certain alleged assessments or calls made by plaintiff's directors upon subscribers to the capital stock. Defendant did not sign the articles of association, and has never, in writing, subscribed for or offered or agreed to take and pay for any of the stock. It is therefore evident that the liability of defendant which is asserted must be rested upon relations and mutual dealings of the parties which have in law the effect of making defendant a subscriber for stock. And this is, in fact, the theory of the plaintiff. The trial court, upon all the testimony which was produced, made the following ruling: `

" In this matter the plaintiff's testimony is to the effect that an allotment of stock in the plaintiff company was

made and 30 shares at $25 were allotted to defendant Cody, and Mr. Cody was not present, but was informed of the action by the company, and, it is claimed, consented to the allotment and agreed to pay for 30 shares at $25 each, and afterwards assessments were made in accordance with the allotment, and Mr. Cody paid his assessments until he said he had paid the sum of $375, at which time he refused to pay any further on the ground that he did not subscribe for any further stock. Now, whatever might be said about the validity of the original transaction, I think the subsequent dealings of the parties creates an estoppel. As to the notice of the assessment sued upon, the by-laws are silent as to any method of giving notice, but there is evidence that notice of some kind was given, so that I think there is a question for the jury, and I will deny the motion to direct a verdict."

Certain undisputed facts in addition to those above stated are relied upon by defendant. The by-laws of plaintiff do not provide for sales of stock. There is no resolution or other action of stockholders providing for sales or any sale of capital stock. There is no affirmative resolution or vote of stockholders or directors allotting stock. The defendant paid calls as they were made until he had contributed $375. He declined to pay further, and demanded of an officer of the company a certificate for 15 shares of stock. This certificate was issued and delivered to him, but not by any authorization of the stockholders or directors.

The testimony relied upon for plaintiff tended to prove that the plaintiff corporation was organized by certain stockholders of another corporation, called the Mutual Mining Company, to lease and explore certain property in Colorado belonging to the Mutual Mining Company. Defendant attended none of the meetings of the promoters of plaintiff company, but he was generally cognizant of the situation, of what was proposed to be done, and of what was done. He understood that stockholders of the Mutual Mining Company were to organize the plaintiff company and take and pay for its stock, and that some allotment of stock would be made to him. He agreed, by

parol, to take about $750. The articles of association provide for a capital of $10,000, with 400 shares. Seven gentlemen, residents of Grand Rapids, subscribed the articles of association and for a total of 240 shares of the capital stock. The articles were acknowledged July 11, 1907, and on that day the first meeting of stockholders was held, at which all of the subscribers were present. By-laws, six in number, were adopted, which provide for a board of five directors, that directors' or stockholders' meetings may be held at any time upon the call of the president, and that the by-laws may be amended or changed at any general or special meeting of the board of directors. There is no by-law providing for or regulating sales of stock. The directors are named in the articles. The printed record is silent upon the subject of the election of officers, but it appears that Mr. Charles R. Sligh acted as president, Mr. D. Emmett Welsh as secretary, and Mr. Lewis E. Hawkins as treasurer. At a regular meeting of directors held July 20, 1907, attended by all of them, the first Tuesday of each month was fixed for the regular meeting of directors, and the place of meeting was designated. A meeting was held August 3, 1907, and, while it is designated in the record thereof as a meeting of the company, it was attended, as the record thereof discloses, by the five directors. At this meeting, a memorandum of an allotment of capital stock was produced, and was entered on the record. The total of shares allotted was 396. Among the persons to whom shares were allotted are all those subscribing the articles of association, excepting two who subscribed for two shares each (whose shares were, however, taken by some one else), and, in addition, a number of persons, among them defendant, to whom was allotted 30 shares. Defendant was advised of this allotment, at first objected to the number of shares allotted, and later, by parol, consented or agreed to it. Assessments or calls were made by the directors July 20, 1907, 10 per cent.; August 3, 1907, 10 per cent.; September 3, 1907, 15 per cent.; October 7, 1907, 15 per cent.;

October 24, 1907, 15 per cent.; December 7, 1907, 15 per
cent.; January 1, 1908, 10 per cent.; February 1, 1908,
10 per cent.   Defendant knew that as to him the calls
were made upon 30 shares or $750 par value.   He paid
four assessments.   The money collected was expended
for the plaintiff in exploiting the leased property and
demonstrating its value.   On his cross-examination, the
defendant testified, in part, as follows:

"There was only one meeting that I remember that I
was present at before the incorporation.   That was at
Mr. Davidson's office.   There were present Mr. Case,
Sligh, Hawkins, Davidson, and myself.   There might
have been one or two more, I don't remember just now.
I don't think Mr. Sligh there had this paper, showing the
allotment with him at that time.

"*Q.* Do you say you never agreed to take any of the
stock at all?

"*A.* No, sir; I never said yes or no.

"*Q.* What did you expect you were paying for when
you paid the 10 per cent.?

"*A.* Well, they suppose—or I supposed that they sup-
posed—I was to take it.

"*Q.* You supposed you had taken it too, did you not?

"*A.* Well, no, I did not.   I didn't know whether I
would take any or not.

"*Q.* What did you pay for, if you did not suppose—

"*A.* I was a member of the old organization, so I
thought maybe it would be well enough to take a little of
the stock.

"*Q.* You knew when you paid that 10 per cent. you
were paying on $750 worth of stock?

"*A.* No, sir; not to take it.

"*Q.* You knew you were paying on that ratio?

"*A.* I supposed that they would figure by that ratio.

"*Q.* You knew they did?

"*A.* On an assessment.   I was not talking about this,
remember.

"*Q.* When you paid the other assessment also it was
based on the $750 allotment of stock?

"*A.* Yes, sir."

The jury was instructed, in substance and effect, that,
to entitle plaintiff to recover, it must appear by a prepon-

derance of the evidence that defendant promised and
.agreed to pay for 30 shares of stock at $25 per share, and
that there was due and unpaid $375; that if plaintiff did
not agree to sell and defendant to buy the stock, so that
mutual promises were made, there could be no recovery,
.and there could be none if defendant made his last pay-
ment, and it was received with the mutual understanding
that it was a payment in full.   The jury was instructed,
further, that plaintiff had the burden of proving that the
assessments sued for were made by the directors, and
that defendant Cody was given notice thereof.   There
was a verdict and judgment for plaintiff.

Aside from errors assigned upon rulings admitting testi-
mony, the defendant contends:

*First.* There was no legal subscription, because (*a*)
stock in a company organized under this statute can be
sold only in such manner as the by-laws may prescribe—
3 Comp. Laws, § 6993; (*b*) the alleged subscription rested
in parol, and was made void by the statute of frauds.

*Second.* There was never a valid call for the assess-
ments sued for.   Act No. 28, Pub. Acts 1905, § 18.

*Third.* Defendant had no notice of the calls sued for
as required by the statute.   Pub. Acts 1905, *supra.*

*Fourth.* The defendant paid for and received a full-paid
certificate of stock and thus ended all relations as a sub-
scriber or claimed subscriber to stock.

These contentions are based upon appropriate exceptions
.and raised by assignments of error.

OSTRANDER, J. (*after stating the facts*).   We are of
opinion, based upon the testimony, that the appellant may
not complain that the question whether his last payment
was accepted in settlement of his alleged subscription was
submitted to the jury as a question of fact.

As has been stated, the testimony tends to prove that
all calls were made by the board of directors.   The action
was affirmative, and is evidenced by the record of pro-
ceedings of the board.   Counsel for appellant say that

two calls, viz., those of October 24, 1907, and January 1, 1908, appear to have been made at a meeting of the Peninsula Leasing Company, and one, viz., that of February 1, 1908, at a meeting of the Peninsular Mining Company, and they say "none of these meetings was a directors' meeting." But the records of proceedings at these meetings show much more. The persons named as being present and the business transacted indicate that they were, in fact, directors' meetings. The statute of frauds (*Sprague* v. *Hosie*, 155 Mich. 30 [118 N. W. 497, 19 L. R. A. (N. S.) 874]) has no application in a case where the arrangement does not provide for or contemplate a sale of stock. Here the arrangement was that the stock, as it originated—as it was issued by the company—should stand in the name of defendant. *Green* v. *Brookins*, 23 Mich. 48, 54 (9 Am. Rep. 74).

It was a question of fact whether defendant had notice of the calls. The by-laws did not prescribe the notice to be given or the manner of giving it. But defendant did not question the form or manner of the notice of calls which he paid, and as we think his liability is established, in part, by such payments, and as he refused to pay any other or further calls, we do not regard it as important, for the purposes of this action, to know more than that he was thereafter requested, as he had been before, to pay calls; a reasonable time being afforded him. He is neither surprised nor injured by a lack of formality. If it was sought to forfeit or to sell his shares for nonpayment of calls, a different question might be presented.

The meritorious question, the one which, if answered favorably to plaintiff, disposes of the other contentions of appellant, is whether the dealings of the parties estop defendant to deny his obligation to take and pay for 30 shares of stock and as well estop the plaintiff to deny him the right to 30 shares. It is undoubtedly of importance, especially when subscriptions to the capital stock of corporations are made, or sales thereof at or near the time of its organization, to know certainly who have become liable to

the responsibilities and are entitled to the rights of shareholders. And it is the general rule that no one can obtain the rights of a member in a corporation except in compliance with the governing law. If that law prescribes conditions or special methods for becoming a member, the law is imperative. This court has held rather strictly to this general rule. *Carlisle* v. *Railroad Co.*, 27 Mich. 315; *Shurtz* v. *Railroad Co.*, 9 Mich. 269; *Parker* v. *Railroad Co.*, 33 Mich. 23. And see *Swartwout* v. *Railroad Co.*, 24 Mich. 389; *International Fair & Exposition Ass'n* v. *Walker*, 88 Mich. 62 (49 N. W. 1086). But these cases, as well as those from other jurisdictions, also recognize the doctrine that the relation of a member in a corporation may arise out of mutual dealings between the individual and the corporation. In the case at bar the testimony warrants the conclusion that the whole movement to organize the plaintiff company was mutual among certain members of another corporation, of whom the defendant was one. There was, in fact, no sale of capital stock to defendant in the ordinary way. The testimony for plaintiff tends to prove an agreement, a mutual preliminary arrangement, carried out by the alleged allotment of shares. It tends to prove that defendant was, to his knowledge, relied upon by his associates to take some stock, and that he, to their knowledge, assented to both the preliminary arrangement and the subsequent actual allotment. There is no denying the fact that defendant acted in accordance with the idea that he was a subscriber for thirty shares of stock. It is just as plain that the corporation recognized him as the subscriber to thirty shares of stock. It cannot be doubted that, if he had continued to pay calls, he could not be denied the shares to which the record of the corporation showed him to be entitled. Upon this subject, see, generally, 10 Cyc. p. 532; 1 Cook on Stock & Stockholders, § 52 *et seq.* The verdict, upon the issues submitted to the jury, is supported by testimony, and the judgment entered on the verdict

ought not, for any reason so far considered, to be disturbed. We find in the other contentions made none which are not disposed of adversely to appellant by what has been said.

The judgment is affirmed.

HOOKER, MOORE, BLAIR, and STONE, JJ., concurred