WILLIAM S. COOPER, Plaintiff

v.

VITRACO, INC., a corporation, NILS KORST, JOEL F. KINNEY, JORGEN B. FOG, and EDWARD BOWER, Defendants

Civil No. 263-1969

District Court of the Virgin Islands
Div. of St. Thomas and St. John

December 10, 1970

HOWARD K. GIBBS, ESQ., of counsel (CORNEIRO AND GIBBS), *for the plaintiff*

ROGER L. CAMPBELL, ESQ., of counsel (McGOWAN, LOUD, CAMPBELL & DENNENBERG), *for the defendants*

CHRISTIAN, *Chief Judge*

### OPINION

This case came on for hearing on the motion to dismiss brought by defendants Nils Korst, Joel F. Kinney and Vitraco, Inc.

The moving defendants appeared by McGOWAN, LOUD, CAMPBELL & DENNENBERG (Roger L. Campbell, Esq., of counsel). Plaintiff appeared by CORNEIRO AND GIBBS (Howard K. Gibbs, Esq., of counsel).

Plaintiff's complaint requests relief on the following grounds: (1) That plaintiff has a subscription agreement with the corporate defendant for shares of stock that have not been delivered, though he has tendered the purchase price; (2) that plaintiff has a lifetime employment contract with the corporate defendant for services that have been refused; (3) that he has incurred expenses on behalf of the corporate defendant. In a fourth "omnibus" count, plaintiff alleges that he also has an employment and stock purchase agreement with the individual defendants, which they have breached; that the individual defendants, the majority stockholders, have breached their fiduciary relationship to plaintiff, the minority stockholder; that the individual defendants induced the above breaches of the corporate defendant; and that the individual defendants conspired both to induce these breaches and to deprive plaintiff of his subscribed stock and employment.

The defendants attack this complaint on several grounds, the most salient being that the asserted employment and subscription contracts are invalid under the Statute of Frauds for lack of a signed memorandum.

Plaintiff has neither offered nor asserted any writing as evidence of a lifetime employment contract. An agreement not to be performed within one year is void, unless there is a memorandum of the agreement in writing.[1] This applies to employment contracts for a duration of one year or more. However, an exception to this rule has long been recognized for lifetime employment contracts which, in the event of death of the employee, could be terminated within a year.[2] Therefore, the lifetime employment contract asserted by plaintiff is not

---

[1] 28 V.I.C. § 244(1).
[2] See Restatement of Contracts, § 198, illustration 2 (1932); Annotation, 135 A.L.R. 646.

within the Statute of Frauds and accordingly may be proved by clear and unequivocal[3] parol evidence. Whether the contract was negotiated with persons who had authority from the corporation to make a lifetime employment contract is a matter for the plaintiff to prove at trial.

■ The applicability of the Statute of Frauds to the stock purchase agreement presents a more difficult question. It is clear that a contract for sale of securities is within the Statute of Frauds provision of article 8 of the Uniform Commercial Code.[4] However, there is some authority that a subscription is not a sale subject to the Statute of Frauds.[5] The defendants have attempted to bring their transaction within the Statute of Frauds by characterizing it as a sale of stock rather than a subscription. In support of their view, defendants rely on the law of Pennsylvania which holds a subscription agreement made after incorporation, as here, to be a sale.[6] However, Virgin Islands law clearly contemplates subscription agreements after incorporation,[7] and this Court will follow the general rule that "subscriptions include those made after incorporation as well as those made before incorporation."[8] Plaintiff asserts in his pleadings that he "subscribed for 1,000 shares of stock." Nothing having been shown to the contrary, I must assume on this motion by defendant to dismiss that the defendant* will prove that

---

[3] Paisley v. Lucas, 346 Mo. 827, 143 S.W.2d 262 (1940), at 271 states:
 A contract for life will be upheld only where the intention, that the contract's duration is for life, is clearly expressed in unequivocal terms.

[4] 11A V.I.C. § 8–319.

[5] See note 9, infra.

[6] Slavintown v. Germantown Fire Ins. Co., 174 F.2d 799, 805 (3rd Cir. 1949); Schwartz v. Manufacturers Casualty Ins. Co., 335 Pa. 130, 6 A.2d 299 (1939).

[7] 13 V.I.C. § 108.

[8] 4 Fletcher Cyclopedia Corporations (Permanent Edition), § 1372 at 31 (1965).

* Should probably read "plaintiff will prove".

his alleged agreement comes within the definition of a subscription agreement.

But even if the agreement is a subscription agreement, the law is far from settled on the question whether the Statute of Frauds applies to such agreements. Several writers state the general rule to be that a subscription for stock is not within the Statute of Frauds.[9] Research reveals, however, that the reasoning of the cases cited in support of this general rule is either cursory or not directly in point. Moreover, there are a number of well reasoned cases standing for the contrary rule.[10]

■ Some courts have excluded subscriptions for unissued shares from the Statute of Frauds as a result of their construction of the operative phrase "goods, wares and merchandise," borrowed from the English statute.[11] These courts reason that although issued stock could come within the definition of "goods," the less tangible unissued stock would not, and hence would not be within the scope of the statute.[12] Such metaphysical distinctions between "goods" and other kinds of personal property have been long eclipsed, at least in relation to securities, by the Uniform Commercial Code provision that explicitly applies to securities.[13] Therefore, this line of reasoning can no longer support a distinction between subscriptions and sales of stock. Other courts have suggested that a subscription is not a "sale."[14] However the broad definition of the word "sale" in the Uniform Commercial Code precludes this Court from coming to the same result. A subscription to stock clearly involves the "passing of title

---

[9] 4 Fletcher, supra, § 1481 at 168; Baker and Cory, Cases and Materials on Corporations, at 757 (3rd Ed. 1959).

[10] See, e.g., Spencer v. McGuffin, 190 Ind. 308, 130 N.E. 407 (1921); Farrell v. Simons, 180 Okla. 600, 71 P.2d 688 (1937).

[11] Stat. 29 Car. 11, c. 3 (1677).

[12] See Spencer v. McGuffin, supra, at 409. Cf. Meehan v. Shays, 151 Mass. 564, 24 N.E. 907 (1890).

[13] 11A V.I.C. § 8–319.

[14] Penninsula Leasing Co. v. Cody, 161 Mich. 604, 126 N.W. 1053 (1910).

from the seller to the buyer for a price."[15] Thus, I agree with the Oklahoma Supreme Court which has stated:

> We do not believe there is a rational difference between the two contracts—that is, the subscription of the capital stock before issue and the sale thereof after issue, in the light of the statute of frauds. We choose to follow the rule that such a subscription is within the statute.[16]

■ Therefore, the alleged agreement is unenforceable by plaintiff, "unless there is a writing signed by (the defendants) sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a stated price."[17]

■ ■ Plaintiff has attached to his affidavit a copy of the minutes of the first meeting of the incorporators of the corporate defendant. These minutes contain statements to the effect that the common stock of the corporation has a par value of ten dollars, that "said common stock has been subscribed for as follows: William S. Cooper—1,000 shares, Nils Korst—1,000 shares, Joel F. Kinney—1,000 shares," and that "said 3,000 shares will be issued within two years from this date upon receipt from the subscribers of money or property having a value of $30,000 . . . ." This memorandum has unambiguous reference to the securities of the corporate defendant, the quantity to be issued to the plaintiff is clearly indicated, and the price is sufficiently stated. This memorandum is signed by all of the three incorporators named in the Articles of Incorporation. These incorporators clearly had authority to bind the corporation under 13 V.I.C. § 7, which provides:

> Until the directors are elected the signers of the articles of incorporation . . . may take such steps as are proper to obtain the necessary subscriptions to stock . . . .

---

[15] 11A V.I.C. § 2–106(1); ef. 13 V.I.C. § 105.

[16] Farrell v. Simons, supra, at 691.

[17] 11A V.I.C. § 8–319.

This memorandum, then, would be sufficient as against the corporate defendant.

 Defendant argues that even if the subscription agreement is enforceable, plaintiff, because of his delay, should be prevented from now enforcing it on the principle of either estoppel or laches. However, according to defendants' own statement, plaintiff offered payment well within the two-year term provided by the quoted memorandum and there is no allegation that the corporate defendant made demand for an earlier payment.[18]

 Defendants' final contention is that plaintiff's pleadings are insufficient to support a count of conspiracy. Civil conspiracy consists of an agreement or combination to perform a wrongful act that results in damage to the plaintiff. Plaintiff has asserted damages consisting of the withholding of stock certificates as well as compensation for employment. He has asserted an agreement among the defendants. Finally, he has charged as a wrongful act, the tortious inducement of the corporate defendant to breach its contracts with the plaintiff.[19] Of course, if there were no breach of contract by the corporation, or if there were no inducement by the individual defendants, an essential element of the wrongful act is absent, and the conspiracy count will not lie. A director can be held liable for inducing a breach of contract by his corporation where the director acts not for the good faith benefit of the cor-

---

[18] Cf. 13 V.I.C. § 110.

[19] The Restatement of Torts § 766 (1939) states that "one who, without a privilege to do so, induces or otherwise purposely causes a third person not to perform a contract with another . . . is liable to the other for the harm caused thereby." Inducing a breach of contract, including employment contracts, is recognized as the kind of wrongful act that will support a conspiracy count. See Wolfson v. Northern States Management Corp., 210 Minn. 504, 299 N.W. 676 (1941) (court assumes conspiracy action will lie for director's inducement of corporation's breach of employment contract); Cranston v. Bluhm, 33 Wis.2d 192, 147 N.W.2d 337 (1967).

poration, but for his personal aggrandizement.[20] Moreover, courts have been especially diligent to prevent the use of a closely held corporation "to shield an individual who is in control of that legal fiction from the consequences of (his) tortious acts."[21] The complaint contains all of the elements of a conspiracy.

Defendants' motions to dismiss are therefore denied in all respects.

---

[20] See W. P. Iverson & Co. v. Dunham Mfg. Co., 18 Ill. App.2d 404, 152 N.E.2d 615 (1958) (conspiracy, including directors, to dissolve corporation so as to avoid contract with plaintiff).

[21] Pennington Trap Rock Co. v. Pennington Quarry Co., 22 N.J. Misc. 318, 38 A.2d 869, 871 (1944) (sole stockholder inducing breach of lease between the corporation and plaintiff); cf. Hitchcock v. American Plate Glass Co., 259 F. 948 (3rd Cir. 1919).