ARTHUR BIRNBAUM, Plaintiff

v.

LASLO ZENDA and MARIE THERESE ZENDA, Defendants

Civil No. 195-77

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

October 19, 1978

330

HARRY DREIS, ESQ., St. Thomas, V.I., *for plaintiff*

BRENDA J. HOLLAR, ESQ., St. Thomas, V.I., *for defendant Marie Therese Zenda*

JAMES A. RICHARDS, ESQ., St. Thomas, V.I., *for defendant Laslo Zenda*

FEUERZEIG, *Judge*

## MEMORANDUM OPINION

This case comes before the court on cross-motions for summary judgment and plaintiff's "Motion to Dismiss Marie Therese Zenda's Special Defenses and Counterclaim." A virtual avalanche of motions, cross-motions, affidavits, counter-affidavits, amended pleadings, requests for admissions and production of documents, and interrogatories have been filed by the parties. The complaint alone has been amended no less than twice. Suffice it to say that this otherwise simple debt action has been greatly complicated by the presence of legal issues apparently never before reached in this jurisdiction including an attack on the constitutionality of the Virgin Islands prejudgment attachment statute, 5 V.I.C. § 251 et seq.

The plaintiff, Arthur Birnbaum, alleges that in 1965 he loaned the defendants, Laslo and Marie Zenda, $10,000.00, which was to be repaid at an annual interest rate of 6 percent with repayment to begin one year from the date of the loan. The loan is evidenced by two letters attached to plaintiff's affidavit in support of his motion for summary judgment. One letter, dated April 30, 1965, acknowledges receipt of $6,000 on a loan of $10,000 and is signed by both defendants. The other, dated June 2, 1965, acknowledges receipt of the remaining $4,000 and is signed only by Laslo Zenda. The plaintiff alleges that from 1966 through 1971 he received only $600 per year from the defendants, representing only the interest on the loan. He further alleges

that no payments have been made since August of 1971, and that the entire principal and interest accrued since that date are due and owing. Accordingly, on March 15, 1977, he filed suit and, by his second amended complaint, claims he is owed $14,185.17 up to and including July 1, 1977.

Upon motion of the plaintiff, a Writ of Attachment was issued against the real property of Marie Zenda on November 29, 1977. The order authorizing the writ provided that Marie Zenda could move to discharge the attachment and obtain an early hearing on the discharge motion without filing a bond. Marie Zenda did not, however, move for such a hearing. In her subsequently filed counterclaim, though, she prays for $14,300 in damages for the alleged wrongful attachment. By her answer she also contends that the plaintiff is barred from recovery by the statute of limitations, the statute of frauds, laches, estoppel and waiver. Laslo Zenda filed a general denial.

Mrs. Zenda and Mr. Birnbaum both have moved for summary judgment. By a stipulation between the plaintiff and Laslo Zenda, Mr. Zenda "hereby adopts and agrees to consolidate as and for his own, the arguments advanced by defendant Marie Therese Zenda in her submitted response to plaintiff's motion for summary judgment there being no defenses or counterclaims interposed in defendant Laslo Zenda's Answer to Plaintiff's Amended Complaint."[1]

## STATUTE OF LIMITATIONS

■ The parties agree that this is an action upon an express contract not under seal and that the six-year stat-

---

[1] Although Laslo Zenda has filed answers to the complaint and the two amended complaints, at no time did he raise by pleading or motion the defenses raised by his codefendant Marie Zenda. Only in his answers to interrogatories does he appear to rely on the statute of limitations defense. In any event, the court must decide the issues raised by Mr. Birnbaum's motions and by Mrs. Zenda's defenses. The court therefore will interpret the stipulation as permitting Mr. Zenda to benefit from Mrs. Zenda's timely raised defenses.

ute of limitations is applicable. 5 V.I.C. § 31(3)(A). The statute begins to run from the date of the defendants' breach, i.e., from the date of the last payment on the contract. 5 V.I.C. § 40.[2] The defendants argue this means the date of the last payment of the principal.[3] Contrary to defendants' contentions, the statute is clear that the date of the last payment is the date of payment of *either* the principal *or* the interest if made after the same has become due.

Plaintiff by affidavit states that the Zendas' last payment was made in August of 1971. Defendants assert that it was in July or August of 1970.[4] This clearly presents a material issue of fact because the plaintiff's complaint was not filed until March 15, 1977. If the defendants are correct, then the action was instituted more than six years after its accrual and is barred by the statute of limitations. 5 V.I.C. § 31(3)(A).

For purposes of his summary judgment motions only, however, plaintiff concedes the July/August 1970 date, and thereby obviates a factual dispute that would bar a decision on this issue in his favor. 5 V.I.C. App. I, Rule 56(c). He contends that his action is timely, notwithstanding the 6½-year delay from the date of the breach to the date of filing his action, because Laslo Zenda absented him-

---

[2] 5 V.I.C. § 40 provides:
Whenever any payment of principal *or* *interest* has been or shall be made upon an existing contract, whether it be a bill of exchange, promissory note, bond, or other evidence of indebtedness, if such payment be made after the same shall have become due, the limitation shall commence from the time the last payment was made. (Emphasis added.)

[3] Defendant Marie Zenda argues that principal payments were to begin within a year of April 10, 1965, and that since neither defendant made any payments of principal the statute of limitations began running and plaintiff's cause of action accrued on April 10, 1966. As a result, the defendant argues the claim is barred because it was not filed until March 15, 1977.

[4] Laslo Zenda's March 31, 1978, answers to request for answers to interrogatories, answer no. 8, stated that "to the best of my recollection [the last payment was made in] August 1970." Marie Zenda's March 24, 1978, answers to interrogatories, answer no. 4, states that, "Payment of last remittance was July 11, 1970."

self from this jurisdiction for six years[5] and Marie Zenda absented herself since 1970.[6] Thus, plaintiff contends his action is protected by the tolling statute, 5 V.I.C. § 35, which omits that period of time during which the defendant is outside the jurisdiction in determining whether the statute has run.[7]

Although she was physically absent from the jurisdiction, Marie Zenda says she was amenable to service of process under the long-arm statute, 5 V.I.C. § 4901 et seq. She argues, therefore, that the tolling provision of 5 V.I.C. § 35 is inapplicable. Plaintiff responds that even though the defendant may have been amenable to process her absence was sufficient to take the case outside the statute of limitations. Mr. Birnbaum argues that the words of the Virgin Islands tolling statute are "clear and explicit," and that if the framers of the statute intended a different meaning "they would have so stated." Finally, he urges that the extraterritorial service provisions are inapplicable here because he was unaware of Mrs. Zenda's address, which he contends she has concealed since 1970.

Plaintiff relies primarily on Bauserman v. Blunt, 147 U.S. 647, 13 S.Ct. 466, 37 L.Ed. 316 (1893). That case is directly on point. Bauserman held that notwithstanding the defendant's continued amenability to in-state service at his place of residence the statute of limitations nonetheless

---

[5] See defendant's answers to plaintiff's motion to limit time to answer interrogatories dated May 16, 1978, in which Mr. Zenda says he left the Virgin Islands in 1970 and returned on or about October 1976.

[6] Marie Zenda's affidavit of September 26, 1977, states "that I have not resided in St. Thomas, Virgin Islands for the past seven years."

[7] 5 V.I.C. § 35 provides:

*Absence or concealment*
(a) If a cause of action accrues against any person who is out of the Virgin Islands or concealed therein, such action may be commenced within the terms herein respectively limited, after the return of such person into the Virgin Islands, or the end of his concealment.
(b) If, after a cause of action accrues, any person departs from and resides out of the Virgin Islands, or conceals himself, the time of his absence or concealment shall not be computed as any part of the time limited for the commencement of such action.

was tolled while he was personally absent from the state. However, plaintiff's reliance on Bauserman is misplaced because the decision was grounded on the "settled" law of Kansas as interpreted by the state's supreme court.[8] In fact, the Supreme Court specifically rejected an invitation to look to Nebraska's contrary interpretation of a similar statute.[9]

Bauserman, therefore, does not dictate a resolution of the statute of limitations issue in this case. Clearly, Bauserman is persuasive, but no more so than a decision by the highest court of any state construing that state's statute. Moreover, it appears that since Bauserman was decided the law of Kansas in this area has changed.[9a] Consequently, the court turns to a consideration of 5 V.I.C. §§ 31 and 35. The two sections represent competing statutory poli-

---

[8] In deciding Bauserman, the U.S. Supreme Court sat as if it were a Kansas court. Thus, it had to apply the statute at issue as it would have been applied by Kansas' highest court.

"The courts of the United States in the absence of legislation upon the subject by congress, recognize the statutes of limitations of the several states, and give them the same construction and effect which are given by the local tribunals. They are a rule of decision under the thirty-fourth section of the judicial act of 1789. The construction given to a statute of a state by the highest judicial tribunal of such state is regarded as a part of the statute, and is as binding upon the courts of the United States as the text. If the highest judicial tribunal of a state adopt new views as to the proper construction of such a statute, and reverse its former decisions, this court will follow the latest settled adjudications."

Bauserman, supra, 147 U.S. at 654, 13 S.Ct. at 469, quoting, Leffingwell v. Warren, 2 Black 599, 603; see also Green v. Neal, 6 Pet. 291, where the Supreme Court reversed a circuit court's decision construing Tennessee law because the latter court considered itself bound by former decisions of the Supreme Court construing the same law. Reversal was premised on the fact that in the intervening years the Tennessee Supreme Court had adopted a construction of the pertinent statutes that was opposite that given by the United States Supreme Court.

[9] But what may be the law of Nebraska is immaterial. The case at bar is governed by the law of Kansas, and the duty of this court to follow, as a rule of decision, the settled construction by the highest court of Kansas of a statute of that state is not affected by the adoption of a different construction of a similar statute in Nebraska or in any other state.

Bauserman, supra, 147 U.S. at 657, 13 S.Ct. at 470.

[9a] See Bond v. Golden, 273 F.2d 265 (10th Cir. 1959), where the Tenth Circuit Court of Appeals, applying Kansas law, held that the statute of limitations was *not* tolled during the defendant's absence from Kansas where the defendant, a nonresident motorist, was amenable to service under the state's long-arm statute.

cies, one favoring repose from stale claims, and the other allowing a party sufficient time to institute a suit against a person who is beyond the reaches of service.

■ As the U.S. Supreme Court noted most recently, "logic and precedent dictate that '[t]he starting point in every case involving construction of a statute is the language itself.'" Greyhound Corp. v. Mt. Hood Stages, Inc., 98 S.Ct. 2370, 2375 (1978), quoting, Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 756 (1975) (Powell, J., concurring). Beyond that, however, it is the general rule that "the purpose and not the letter of a statute controls." Walsh v. Ogorzalek, 361 N.E.2d 1247, 1250 (Mass. 1977).

Plaintiff is correct in asserting that § 35 is clear and explicit. By its terms it admits no exceptions. However, this does not resolve the issue. Plaintiff argues that if the framers intended a different meaning they would have so stated, but plaintiff does not state what the Legislature intended. Concededly, this is no easy task.

Section 35 was based on § 7 of Title III, Chapter 2 of the 1921 Codes of the Municipality of St. Thomas and St. John. Title III of the 1921 Codes was taken from the Compiled Laws of the Territory of Alaska, 1913, Burch v. Burch, 2 V.I. 559, 571, 195 F.2d 799, 805 (3d Cir. 1952); James v. Henry, 3 V.I. 273, 157 F.Supp. 226 (D.V.I. 1957), which were derived from the laws of Oregon. Alaska Credit Bureau of Juneau v. Fenner, 80 F.Supp. 7, 10 (D. Alas. 1948). Legislative history, however, is unavailable for any of the various enactments. In addition, research has failed to disclose a single decision by an Oregon or Alaska court rendered before 1921 on the issue at bar.[10] More importantly, the tolling statute and the statute of limitations were draft-

---

[10] Such a decision would be binding on this court under settled principles of statutory construction. Berkeley v. West Indies Enterprises, Inc., 10 V.I. 619, 480 F.2d 1088 (3d Cir. 1973); Williams v. Dowling, 4 V.I. 465, 318 F.2d 642 (3d Cir. 1963).

337

ed long before the long-arm statute.[11] As a result, in the absence of legislative history, this court does not believe it realistically can determine what effect, if any, passage of the long-arm statute was intended to have on the tolling statute.

The court thus turns to the decisions of other courts construing similar statutes to determine the common law rule. 1 V.I.C. § 4. Courts have long been divided on this issue. However, both Alaska and Oregon have decided that amenability of the defendant to service outside the jurisdiction precludes application of the tolling statute. Byrne v. Ogle, 488 P.2d 716 (Alas. 1971); Whittington v. Davis, 221 Ore. 209, 350 P.2d 913 (1960). While not controlling, these decisions construing the precursor of 5 V.I.C. § 35 are highly persuasive. See Cirino v. Hess Oil Virgin Islands Corp., 9 V.I. 518, 384 F.Supp. 621 (D.V.I. 1973); Estate of Georg, 7 V.I. 298, 298 F.Supp. 741 (D.V.I. 1969).

The Alaska court concluded that the tolling statute should be read so as to guarantee a plaintiff his day in court by preserving his cause of action until service can be effectuated on an absent or concealed defendant. The court then identified the policy behind statutes of limitations and concluded:

> To apply the tolling statute to a situation where the defendant is at all times amenable to service is repugnant to the general purposes of statutes of limitations. The policy of the law is to allow a reasonable but definitely limited time for the bringing of an action after which the matter is put to rest. To accede to appellant's argument and apply the tolling statute would mean that action against absent defendants would practically never be outlawed. A purported claim might be held in suspense for any number of years before an action was commenced even though the action could have been instituted through substituted service at any time. Such

---

[11] Title 5 V.I.C. § 4901 et seq., the Virgin Islands long-arm statute, is based on the Uniform Interstate and International Procedure Act approved in 1962 by the National Conference of Commissioners on Uniform State Laws and enacted in the Virgin Islands on March 15, 1965.

a result is not only inconsistent with the general purposes of statutes of limitations, but could conceivably result in great hardship.

... The goal of [the statute of limitations and substituted service] statutes is to provide speedy adjudication of claims. We cannot, absent clear evidence, attribute to the legislature an intent to subvert that goal in the face of the readily available and more reasonable interpretations we have adopted.

To hold otherwise would permit a plaintiff to bring this action at any time without regard to the statutory period of limitation. Moreover, if both the substituted service statutes and the tolling statute are applied, a plaintiff is given greater advantage over an absent motorist than he has over a resident motorist defendant or the usual, nonmotorist, nonresident defendant. By virtue of substituted service alone, the absent motorist is in circumstances similar to the resident motorist. For purposes of service he is as available as a resident. However, if both substituted service and the tolling statute are made applicable, the nonresident motorist is provided less protection than the nonmotorist, nonresident defendant who is not subject to substituted service. At the same time, he is made more vulnerable than the resident motorist defendant in whose favor the statute of limitations is allowed to run. Such inequitable results can hardly be justified where a more reasonable construction consistent with legislative intent is available.

Byrne v. Ogle, supra, 488 P.2d at 718–19. The Oregon court in Whittington v. Davis, supra, was persuaded by the same policy considerations. Id. 350 P.2d at 915.

The Byrne and Whittington decisions were relied on extensively by the Supreme Court of Wyoming in Tarter v. Insco, 550 P.2d 905 (1976), where the appellant, like Mr. Birnbaum in the present case, had argued that not to apply the plain language of the statute was impermissible judicial legislation. The court responded:

We find our point of departure with appellant's logic to be in the proposition that while the [tolling] statute is not ambiguous neither is it applicable.

. . . .

In order to consider the invocation of the tolling statute . . . it must be read to mean . . . that the defendant absconded, concealed

339

himself, or departed from the state *in such manner so that he is beyond the reaches of the law for purposes of service.* (Emphasis in original.)

Id. at 908–09; accord, Walsh v. Ogorzalek, supra; Whittington v. Davis, supra; Lipe v. Javelin Tire Co., 96 Idaho 703, 536 P.2d 291 (1975). The court found no justification for a tolling statute other than where service is impossible or unusually difficult to effect. Consequently, where the defendant easily can be served, there is no reason for tolling the statute of limitations. To permit tolling would lead to the type of situation so strongly criticized by Mr. Justice Holmes.

> "It is revolting to have no better reason for a rule than it was so laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past."

Holmes, The Path of the Law, 10 Harv. L. Rev. 457, 469, quoted by the Tarter court, 550 P.2d at 909.

■ The rule laid down by the Alaska, Oregon, and Wyoming courts is the majority position,[12] and one that this court finds not only persuasive but in step with the modern "trend of the law." Cf. Whittington, supra, 350 P.2d at 915. Accordingly, pursuant to 1 V.I.C. § 4, this court adopts what it perceives to be the rule of the common law,[13] and holds that the tolling statute, 5 V.I.C. § 35, is

---

[12] Tarter v. Insco, supra, 550 P.2d at 907 n.5, provides an excellent index of the jurisdictions that have adopted and rejected this position. See also Anno. 55 A.L.R.3d 1158 (1974). According to Tarter, decided only two years ago, courts in 27 states have held that where the defendant is amenable to service the plaintiff's claim is not tolled. To that number may be added the Supreme Judicial Court of Massachusetts, which adopted the majority position only last year. Walsh v. Ogorzalek, supra. Only five states hold to a contrary view. See Tarter v. Insco, supra, 550 P.2d at 908 n.5.

[13] Varlack v. S.W.C. Caribbean, 13 V.I. 666, 550 F.2d 171 (3d Cir. 1977) (Court is "guided by the majority rule in the United States"). Cf. Murray v. Beloit, Civ. No. 76-539 (D.V.I., Div. St. Croix, May 25, 1978) (Young, J.) (the Restatements constitute the rules of decision "only to the extent that they accurately express prevailing rules of common law.").

inapplicable to situations where the defendant is amenable to service of process under the long-arm statute.[14]

■■ Amenability to service, of course, means that the defendant actually can be found by diligent efforts. The policy in favor of giving the plaintiff only a prescribed period of time within which to bring his suit is a strong one, but a plaintiff should not be required to take unreasonable efforts or incur extravagant costs in attempting to locate a defendant.[15] Whether the defendants could have been located or were absent from or concealed within the meaning of 5 V.I.C. § 35 clearly raises issues of fact that require a denial of the motion for summary judgment and a hearing. See Walsh v. Ogorzalek, supra. Since plaintiff seeks to benefit from the tolling statute, it will be plaintiff's burden to show either that the defendants could not have been located by reasonably diligent efforts or that the defendants, in fact, concealed their addresses from him. Plaintiff, of course, will be free to prove that the defendants made their last payment sometime after March 15, 1971, and thereby obviate the statute of limitations defense.

### STATUTE OF FRAUDS

Marie Zenda next contends that she is chargeable with only $6,000 of the $10,000 loan that was made to the defendants because only one of the two letters acknowledg-

---

[14] The court rejects the plaintiff's contention that a distinction can be made between cases involving nonresident motorists who appoint an in-state official as their agent for purposes of receiving service and other nonresident defendants. This is a distinction without a difference. So long as the defendant is legally amenable to service of process, whether inside or outside the Virgin Islands, by agent or otherwise, there is no reason to apply the tolling statute. Walsh v. Ogorzalek, supra, 361 N.E.2d at 1249 n.3.

[15] In this connection see Viars v. Surbaugh, 335 A.2d 285 (Del. Super. 1975), where the court found that the defendant, upon leaving the jurisdiction, had a duty to notify the post office of his forwarding address.

ing receipt of the loan was signed by her.[16] She relies on 28 V.I.C. § 244(1), the Virgin Islands Statute of Frauds, which declares that a contract is void if it is not to be performed within one year from the date of its making, unless it is evidenced by some writing subscribed by the party to be charged.

■ This contention is without merit. The April 30, 1965, letter, which admittedly was signed by Mrs. Zenda, is a sufficient writing to take the contract out of the operation of the statute of frauds. While it is clear that the original agreement between the parties was oral, there is no requirement that a writing be made contemporaneously with the agreement. A subsequent reduction of an oral agree-

---

[16] The two letters in their entirety read:

The Mill
Estate Contant
St. Thomas
V.I.

April 30, 1965

To: Mr. Arthur Birnbaum
 N.Y.C., N.Y.

Dear Arthur:

This letter should certify that we received from you a six thousand dollars [sic] ($6,000) on a loan of ten thousand dollars (10,000) [sic] Repayable at a monthly rate of $200.00 with a 6% yearly interest.

The montly [sic] payment should start a year from the date of this letter or sooner if possible.

The remaining $4.000 [sic] we will call for by the Ist [sic] of July 1965, or the time we plan to open our restaurant.

Thank you very much.

Gratefully,
/s/ Marie Therese Zenda
/s/ Laslo Zenda

June 2, 1965

Laslo Zenda
P.O. Box 1328
St. Thomas, Virgin Islands

Arthur Birnbaum, N.Y.C.

Dear Arthur this letter should acknowledge that you loaned us $4,000— Four Thousand Dollars. This amount with the previous $6,000 make [sic] $10,000—Ten Thousand Dollars. As we agreed, we are paying 6% interest and we start to pay back July 1st 1966.

Thank you very much.

/s/ Laslo Zenda

342

ment to writing is sufficient to avoid the proscription of the statute. Restatement of Contracts § 214 (1932); Restatement (Second) of Contracts § 214 (Tent. Draft 1973).

█ The letter that Marie Zenda signed, although acknowledging receipt of only $6,000, recites the terms of the contract orally agreed to by the parties with sufficient clarity and certainty to constitute a writing within the meaning of 28 V.I.C. § 244. The letter states that a loan of $10,000 had been agreed to by the parties, that $6,000 had already been received, that the remainder would be available to the Zendas by July 1, 1965, that the loan was repayable at a monthly rate of $200.00 at 6 percent yearly interest, and that repayments were to commence by April 30, 1966, at the latest. Nothing more is needed. Restatement of Contracts § 207 (1932); Restatement (Second) of Contracts § 207 (Tent. Draft 1973).

█ The statute of frauds defense fails for still another reason. The defense is unavailable where one of the parties to a contract has fully performed. Restatement of Contracts § 198 (1932); Restatement (Second) of Contracts § 198(2) (Tent. Draft 1973). This rule, although not universally recognized, has been adopted by the great majority of states. See Annot., 6 A.L.R.2d 1053 (1949). It is a rule of the common law within the meaning of 1 V.I.C. § 4, and there is no specific local law to the contrary. Cf. Cooper v. Vitraco, 8 V.I. 112, 320 F.Supp. 239 (D.V.I. 1970). In this case, it is undisputed that Mr. Birnbaum has met all his obligations.

Accordingly, there appears to be no genuine issue of material fact. The plaintiff being entitled to judgment as a matter of law on the statute of frauds issue, partial summary judgment will be entered on behalf of the plaintiff. 5 V.I.C. App. I, R. 56(d).

Mrs. Zenda asserted laches as an affirmative defense in her answer, and plaintiff addressed the issue in his motions. Mrs. Zenda has not pressed the issue in her opposition to Mr. Birnbaum's motions nor has she responded to plaintiff's motion to dismiss for failure to state a legal defense.

■ As the defendant recognizes, laches is an equitable defense, having a separate existence from the statute of limitations defense that is available in a court of law. It is an appeal to the "equity conscience" of the court. Smith v. Smith, 168 Ohio St. 447, 156 N.W.2d 113 (1959), and is assertable only in an action at equity. Id.; Aronovitch v. Levy, 238 Minn. 237, 56 N.W.2d 570 (1953); In re Estate of Thomson, 362 Mo. 1043, 246 S.W.2d 791 (1952); 27 Am.Jur.2d Equity § 154, at 690 (1966). Where the plaintiff is seeking a legal remedy upon a legal right his action may be barred by the statute of limitations and laches has no application. Aronovitch v. Levy, supra. Although it has been observed that no illogical or disastrous results would follow if the defense were permitted in an action at law, "the rule is so well settled," In re Estate of Thomson, supra, 246 S.W.2d at 797, that its abrogation would be unjustified. 1 V.I.C. § 4.

Arthur Birnbaum is suing on a contract for repayment of a loan of a stated sum of money. No citation to authority need be adduced for the proposition that plaintiff's claim is an action at law. Accordingly, plaintiff's motion to dismiss will be granted as to the defense of laches.

## WAIVER AND ESTOPPEL

■ Defendants next contend that the plaintiff waived his right to repayment. In answer to interrogatories Mrs. Zenda states payments were made "[f]rom 1966 to 1970

. . . when Mr. Zenda tried to repay part of the debt and Mr. Birnbaum said it was not necessary at the moment since he was not in need of money."[17] The defendant, therefore, contends that this statement and the fact that no demand for payment was made after the last payment in July or August of 1970, estop the plaintiff from pressing his claim or, at the least, constitute a waiver of his right to collect the balance of the loan. In effect, then, Mrs. Zenda contends the plaintiff has discharged the defendants from their obligations under the contract.[18] The law is settled, however, that for a discharge to be enforceable it must be supported by consideration or one of its substitutes. Restatement (Second) of Contracts § 343 (Tent. Draft No. 13, March 1, 1978).[19] Although the express statement of this rule in the tentative draft of the Restatement (Second) of Contracts is new, section 343 expresses "a fundamental principle that was implicit in former Chapter 13."[20]

Defendants have not alleged any recognized consideration for the purported discharge. Mrs. Zenda, however, argues in her brief in opposition to plaintiff's motions that the required consideration "can easily be supported by the detriment, prejudice, loss or disadvantage suffered or undertaken by the defendant Marie T. Zenda by relying upon

---

[17] Mrs. Zenda's answers to interrogatories dated March 11, 1978. Answer No. 5. See also answers 11 and 12. In the Stipulation of Facts, dated May 5, 1978, Mrs. Zenda stipulated that her defense of waiver and estoppel is based on the incident reported in her answers to interrogatories and that the incident occurred "in or about July 1971."

[18] Plaintiff by his April 13, 1978, answers to interrogatories, nos. 34, 35, and 36, denies ever telling either defendant that he or she need not make payments on the loan. This, of course, would create a material issue of fact requiring a trial, but plaintiff argues that even assuming such a statement was made, he still is entitled to summary judgment.

[19] Illustration 1 to comment a provides:
A whom B owes $1,000 for goods delivered, gives B a signed writing that states, "I hereby irrevocably give, transfer, assign and release my right to the $1,000 that you owe me." A's debt is not discharged. Compare § 354 with § 164(1)(a).

[20] Restatement (Second) of Contracts, Reporters Note to Topic 1. The Requirement of Consideration at 6 (Tent. Draft No. 13, March 1, 1978).

the plaintiff's representations."[21] This clearly raises a question of fact as to whether there was detrimental reliance by the defendant that made the alleged discharge enforceable. Restatement (Second) of Contracts § 343(c) (Tent. Draft No. 13, March 1, 1978).

> [A] discharge that is originally ineffective may become effective if it has induced such action or forebearance as would make a promise enforceable.

Id. comment b at 9.[22]

▉ Plaintiff argues that Mrs. Zenda has not produced any facts to sustain her defense of waiver and estoppel. It is the plaintiff, however, who has moved to dismiss these defenses. Clearly, Mrs. Zenda properly has asserted the affirmative defenses of waiver and estoppel. Rule 8, 5 V.I.C. App. I, R. 8. She need not, in response to a motion to dismiss, prove her case. That is the purpose of a trial. Nor may the plaintiff prevail on this issue in his motion for summary judgment. Here he, and not the defendant, bears the burden of demonstrating the absence of any genuine issues of material fact. Lockhart v. Hoensteine, 411 F.2d 455, 458 (3d Cir.), cert. denied, 396 U.S. 941 (1969). The plaintiff, for the purposes of his motion having conceded the statement attributed to Mr. Birnbaum, has not met his burden of showing that there is no genuine material issue of fact and that he is entitled to judgment as a mat-

---

[21] In her March 24, 1978, answers to interrogatories, answer no. 12, Mrs. Zenda stated: "By plaintiff allowing defendants to rely upon his representations to their detriment he should be estopped and barred from any attempt to revive any obligation that may have existed."

[22] See § 90 of the Restatement (Second) of Contracts (Tent. Draft Nos. 1–7 1973):

*"Promise Reasonably Inducing Action or Forebearance*

"(1) A promise which the promisor should reasonably expect to induce action or forebearance on the part of the promisee or a third person and which does induce such action or forebearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires."

See also Restatement of Contracts § 90 (1932).

ter of law. Accordingly, plaintiff's motions for summary judgment and to dismiss the defense of waiver and estoppel will be denied.

## PREJUDGMENT ATTACHMENT

Marie Zenda in her counterclaim seeks damages for wrongful attachment. The plaintiff, however, asks the court to dismiss the claim as being without merit, or, as the court reads the motion, for failure to state a claim. 5 V.I.C. App. I, R. 12(b)(6). Mrs. Zenda argues

(1) that the requirements of the Virgin Islands prejudgment attachment statute, 5 V.I.C. § 251, were not followed before issuance of the writ of attachment,

(2) that assuming there was compliance with the statute, the statute is unconstitutional, and

(3) that even if the procedures followed by the court in the instant case were sufficient from a constitutional standpoint, the court's order "adopting proper standards and procedures cannot cure a defective statute."

With respect to her first argument, Mrs. Zenda complains that no affidavit was filed in support of the motion for issuance of a writ as required by 5 V.I.C. § 252.[23] This simply is not the case. An affidavit dated May 13, 1977, and signed by the plaintiff was submitted in support of the initial request for an attachment. It was the court's position, however, that the affidavit was insufficient because it contained mere conclusory allegations. Moreover, by order dated November 14, 1977, the court denied plaintiff's motion for issuance of the writ until there was compliance with North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975);

---

[23] 5 V.I.C. § 252 requires the filing of an affidavit showing that the defendant is indebted to the plaintiff, that the debt is a bona fide existing debt and that the attachment is not sought to hinder or defraud any creditor of the defendant.

347

Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); and Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). On November 17, 1977, plaintiff amended his complaint and again moved for a writ of attachment. The amended complaint was subsequently verified by the plaintiff's attorney. The order for the issuance of the writ, dated November 29, was founded on the amended complaint as verified, which the court found to be in compliance with the affidavit requirements of 5 V.I.C. § 252.

Mrs. Zenda also makes much of the fact that she received notice of the order authorizing the writ of attachment on December 3, 1977, before receiving the summons and complaint on January 18, 1978. Moreover, because the amended complaint was not certified until December 13, 1977, she contends that "issuance [of the summons] prior to that date was highly unlikely," and in contravention of 5 V.I.C. § 251. The statute is clear, though, that the plaintiff may have a writ of attachment issued "at the time of issuing the summons." The date of service of the summons and complaint on defendant is legally irrelevant.[24] The summons here was issued on November 17, 1977, the date plaintiff filed his second amended complaint.

 Mrs. Zenda, relying on Fuentes, Mitchell and Di-Chem, attacks the constitutionality of the prejudgment attachment statute. She concedes, however, that the procedures followed by the court virtually complied with the constitutional prerequisites of Fuentes, Mitchell and Di-

---

[24] Plaintiff in response claims by an unsworn statement that the summons was sent by certified mail on November 17, 1977, and was returned "unclaimed" on December 14, 1977. A copy of an affidavit now is on file from one Alfred Fryser stating that he personally served Mrs. Zenda with a copy of the summons and amended complaint in New York, New York, on January 17, 1978.

Chem.[25] She argues, though, that the court ran afoul of the Constitution because it was without authority to issue the writ based on the statute as written.

It is axiomatic that

[w]hen the validity of an act . . . is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that [a court] first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.

Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932); accord, e.g., United States v. Thirty-Seven (37) Photographs, 402 U.S. 363, 369, 91 S.Ct. 1400, 1404, 28 L.Ed.2d 822 (1971), reh'g denied, 403 U.S. 924; Schneider v. Smith, 390 U.S. 17, 27, 88 S.Ct. 682, 687, 19 L.Ed.2d 799 (1968); United States v. Rumely, 345 U.S. 41, 45, 73 S.Ct. 543, 545, 97 L.Ed. 770 (1953); Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 348, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). A construction of legislation that supports its constitutionality has been consistently favored over one that denies it. Screws v. United States, 325 U.S. 91, 98, 65 S.Ct. 1031, 1033, 89 L.Ed. 1495 (1945); Kelsey v. Weinberger, 498 F.2d 701, 708 (D.C. Cir. 1974) and citations therein; Government v. Caneel Bay Plantation, 5 V.I. 655, 662 (Mun.

---

[25] In the case at bar, the order of November 29, 1977, authorizing the writ was issued by the court. It was issued only after the plaintiff had filed an affidavit and a verified amended complaint that set forth in detail the facts on which the claim was based, the nature of the claim, and the grounds for its issuance. Thus, more than mere conclusory allegations were before the court. Also filed was a $14,300 cash undertaking to secure defendant against the possibility of a wrongful attachment. The order authorizing the clerk to issue the writ also provided that the defendant could move for an immediate hearing to discharge the attachment, at which hearing it would be the plaintiff's burden to show the need for the attachment pendente lite. Finally, the court waived the requirement of 5 V.I.C. § 263 that defendant deliver an undertaking as part of her application for a discharge of the writ. See 4 V.I.C. § 243(8). The court permitted this because the hearing would have been for the purpose of determining the plaintiff's right to have the writ issue rather than the plaintiff's right to keep the attachment in force pendente lite. The defendant failed to move either to discharge the writ or to request a hearing and cannot now be heard to complain on this point.

Ct. 1966); 3 Sutherland, Statutory Construction § 72.08 (4th ed. 1974).

██ Although 5 V.I.C. § 252 does not demand more than bare conclusory allegations, it does not prohibit more. It easily is susceptible to a construction consistent with Fuentes that the plaintiff's affidavit set forth in detail the facts upon which his request for a writ is based. Likewise, although the statute does not specifically provide for continuing judicial oversight after issuance of the writ it does not prohibit it. The court believes, therefore, that no question of the act's constitutionality can be raised on these grounds.

██ Mrs. Zenda's strongest argument concerns 5 V.I.C. § 252, which allows the clerk to issue the writ upon request of the plaintiff. Under Fuentes, Mitchell, and Di-Chem, this provision is insufficient. This determination, however, does not "affect, impair, or invalidate" either the other provisions of that section or the other sections of the act. 1 V.I.C. § 51; cf. United States v. Thirty-Seven (37) Photographs, supra, 402 U.S. at 372. More importantly, the fact that the clerk may not on her own issue a prejudgment attachment does not mean the clerk is prohibited from issuing the writ upon order of the court. Issue it may, by the order of a judge, in compliance with the valid provisions of the statute and in light of the due process requirements enunciated by the Supreme Court.

The court concludes, therefore, that the attachment was properly issued pursuant to 5 V.I.C. § 251 et seq. and that the court properly interpreted the statute to comply with constitutional requirements. The court does not, however, decide at this point whether defendant is entitled to any damages for wrongful attachment for reasons other than the alleged infirmity of the statute or procedures followed by the court in authorizing the writ. That decision of course must await a trial on the merits.