**DANIEL KEVIN SMITH, Plaintiff**

**v.**

**EDWARD ROBSON, JANET ROBSON, and POINT RENDEZVOUS, INC., Defendants**

Civil No. 286/96

Territorial Court for the Virgin Islands

Division of St. Thomas and St. John

June 26, 2001

56

KARIN A. BENTZ, ESQ., St. Thomas, Virgin Islands, *Attorney for Plaintiff*

NORMAN P. JONES, ESQ., Jones & Tatom, St. Thomas, Virgin Islands, *Attorney for Defendant*

FRANK M. HAGEDORN, ESQ., Hall, Estill, Hardwick, Gable, Golden & Nelson, Tulsa, Oklahoma, *Co-Counsel for Defendant*

HODGE, *Judge*

## MEMORANDUM OPINION

(June 26, 2001)

Before the Court is Defendants' Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Motion for Sanctions. Defendants seek summary judgment in their favor, arguing that the Plaintiff is not the real party in interest, that the Statute of Frauds bars the action, and that there are no issues as to any material facts in this case. Because the Court is satisfied that issues remain as to material facts, and for the reasons set forth more fully below, Defendants' motion for summary judgment will be denied.

## FACTS

Plaintiff Daniel Kevin Smith ("Smith" or "Kevin Smith") filed this lawsuit in May 1996 alleging numerous claims for relief arising from the alleged breach of an oral joint-venture agreement.[1] Thus, this case, in its simplest form, is about that joint venture agreement, entered into in November 1989, which provided that the Robsons would buy a tract of property, known today as Point Rendezvous, Smith would develop and sell the subdivided property, and the profits would be shared proportionally—the Robsons receiving 75% of the profits and Smith receiving 25%, Essentially, Smith claims that he has not received his share of the profits from the Point Rendezvous project.

However, the Robsons maintain that Smith gave up his interest in the Point Rendezvous project in about March 1992 when he went to work full time at the Marina Market, a grocery store on St. John, which was also owned by the Robsons. In addition, the Robsons claim that there

---

[1] The causes of action as set forth in the Amended Complaint include Breach of Joint Venture Agreement, Demand for Accounting and Profits, Equitable Ownership and Lien, Breach of Fiduciary Duty, Mismanagement, Repudiation and Breach of Principle Agency Contract, Misrepresentation and Civil Conspiracy. It is noteworthy that, while claims for restitution (such as unjust enrichment) and damages for total breach (resulting from repudiation) are "inconsistent" a plaintiff may claim these remedies as alternatives. FED. R. CIV. P. Rule 8.

have been no profits, that they are still owed approximately $4,000,000.00, that another $1,000,000.00 will be required to complete Point Rendezvous, and therefore, that Smith is not entitled to any money. Because even these preliminary facts are in dispute, litigation has been protracted and tedious thus far.

The Defendants have filed several motions for summary judgment setting forth the following five issues which must be determined by the Court: (1) whether Kevin Smith is a proper party to this action, as opposed to his former real estate company; (2) whether the oral agreement is barred by the Statue of Frauds on the ground that it cannot be performed within one year; (3) whether the issue of Plaintiff's interest in the joint venture has been decided, precluding the relitigation; (4) whether the issue is ripe; and (5) whether the counterclaims should be bifurcated. In addition, the Motion sets forth several factual issues, which in this case, must be determined by a jury. The Court will address each of these issues in turn.

## DISCUSSION

Summary judgment is proper when there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56. Thus, summary judgment will be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). The Court should grant summary judgment only where, after viewing all evidence presented in a light most favorable to the nonmoving party, it can conclude that no reasonable trier of fact could find for the nonmovant. *Id.*

### 1. Kevin Smith is a proper party to this action wherein he alleges the existence of an oral contract with Defendants Edward and Janet Robson.

Kevin Smith alleges that he entered into an oral agreement to form a joint venture with Edward and Janet Robson. The purpose of the joint venture was to purchase, subdivide and resell real estate known today as Point Rendezvous, located on St. John, Virgin Islands. No written agreement was entered into. The Robsons were to fund the project, and Smith was to contribute 'sweat equity' and oversee the subdivision and

reselling of the lots. The profits were to be divided 75% to 25% respectively. Consequently, Smith's former real estate company American Paradise Real Estate Company (American Paradise) was given an exclusive listing and Smith agreed to forgo commissions on the individual sales.

However, the Robsons claim that they did not enter into an agreement with Smith personally. Instead, they maintain that the agreement was between themselves and American Paradise, the real estate company operated by Smith and his former wife Joan Sparling. Because, at this time, Smith has no interest in the real estate company, having renounced his interest during his divorce from Sparling, the Defendants assert that Smith has no interest in the joint venture. However, Defendants' claim is not sufficiently supported by the evidence to resolve on summary judgment.

■ Deciding whether there was a contract between Smith and the Robsons requires a determination of the intent of the parties[2]—whether they manifested a mutual intent to be bound—and this question is one for the fact finder. *Macedon v. Macedon*, 19 V.I. 434 (Terr. Ct. 1983) (where there is an issue of material fact as to the existence or substance of an alleged agreement summary judgment must be denied).

For the purpose of summary judgment, the Court will look at the evidence in the light most favorable to the nonmoving party. In this case, a reasonable jury could certainly find that Smith entered into an agreement with the Robsons and, therefore, that he was a party to the agreement. There is amply evidence to support that conclusion. There was a long-standing personal relationship between the Robsons and Smith which could indicate that the Point Rendezvous agreement was personal to Smith.

In addition, Smith's ex-wife, Joan Sparling, did not testify in her deposition that she had any specific duties or rights under the joint venture agreement, although she would benefit as Smith's wife if the project were a success. Further, it is undisputed that Smith was personally responsible for overseeing the development of the subdivision—including some

---

[2] Determining whether the parties intended to create a joint venture is a question of intent, and therefore, must be gleaned from the terms of the agreement or such a relationship may be inferred from the conduct of the parties. *See*, Judson A. Crane, *Law of Partnership* §§ 9, 35 (1977).

construction work. Thus, there is an issue of material fact as to the existence of the alleged oral agreement between Smith and the Robsons and summary judgment on this issue will be DENIED.

## 2. The joint venture agreement is not within the Statute of Frauds.

Defendants also argue that the oral agreement is unenforceable under the Statue of Frauds. The Robsons explain that the parties anticipated that the Point Rendezvous development would take several years to complete and, therefore that the joint venture agreement is unenforceable because there was no written memorandum of the agreement. However, the fact that the project was expected to take several years to complete is not dispositive.

To the contrary, the Statue of Frauds provides that an oral agreement which by its terms is not to be performed within one year is unenforceable. 28 V.I.C. § 244(1).[3] It is settled that no written agreement is necessary to establish a joint venture relationship. John D. Calamari, CONTRACTS 2nd Ed. § 23 (1977); CORBIN ON CONTRACTS § 457-59 (1950). Partnerships and joint ventures without fixed terms are deemed to be "at will" subject to dissolution by either partner at any time. Therefore, such agreements are not within the Statute of Frauds.[4]

---

[3] The Statute of Frauds also requires a writing for land contracts. *See*, 28 V.I.C. § 243.

"The situations which produce ... difficulties and conflicts of authority are those of oral agreements to join in a future partnership or joint venture to buy and sell land. Typically, then, one partner makes the deal in his own name with his own money or credit, and the other claims his share. In most states an oral agreement to give another an interest in land owned or to be acquired by the promisor does not give the promisee an enforceable legal or equitable interest in the land. That the disappointed promisee has rendered services in connection with the transaction is often insufficient part performance to take the agreement out of the Statute and permits its specific enforcement. However, if the promisee brings an action for an accounting of profits derived from the venture, or a breach of contract action at law, it seems he is entitled to a remedy. He is not seeking to establish an interest in land or to enforce a promise to transfer to him such an interest, but is claiming a share of the money due him by the agreement. The weight of authority gives him relief." John D. Calamari, CONTRACTS, 2nd Ed. § 39 (West 1977).

[4] Further, the Statute of Frauds defense is unavailable in the Virgin Islands where one party has fully performed under a contract. *Birnbaum v. Zenda*, 15 V.I. 329 (Terr. Ct. 1978). In addition, part performance often takes a case out of the Statue of Frauds because it would be inequitable to allow a party to invest time and labor

■ It is immaterial that the performance of the contract *actually* exceeds one year. So, for example, a contract for a two-year employment term must be in writing, but a contract for lifetime employment need not be in writing because the employee's death *could* occur at any time. *See, Cooper v. Vitraco, Inc.*, 320 F. Supp. 239, 8 V.I. 112 (D.V.I. 1970). Therefore, because the agreement did not set forth any specific term, the resulting relationship was terminable at will, and, as a result is not within the Statute of Frauds. In addition, the development of Point Rendezvous could have been completed at any time; and, the fact that its completion within a year was unlikely is irrelevant. Therefore, summary judgment will be DENIED because the agreement is not within the Statue of Frauds.

### 3. The issue of Plaintiff's interest in Point Rendezvous has not been previously decided.

Defendants also assert that a court has decided the issue of Smith's interest in Point Rendezvous during Smith's divorce from Sparling and, that the doctrine of issue preclusion, or collateral estoppel, prevents its relitigation. The settlement agreement entered into between Sparling and Smith acknowledges certain debts owed to the Robsons, but fails to mention any interest in Point Rendezvous. Defendants maintain this position because Edward Robson provided Smith's divorce attorney with a letter (at Smith's request) stating that Smith and Sparling had abandoned the original Point Rendezvous agreement, and that they were not entitled to any of the proceeds. Apparently, Smith acquiesced to the contents of this letter, and provided a copy of it to his wife's attorney.

Therefore, Defendants argue, Smith acknowledged that he had no interest in Point Rendezvous because, if he had an interest, he would have objected to the Robsons' letter and would have addressed Point Rendezvous in the property settlement agreement. Further, Defendants maintain that, because the settlement agreement was incorporated in the divorce decree, these admissions have been decided, and are thus *res judicata* and cannot be relitigated in this court.

---

upon the faith of a contract that did not exist. *Henderson v. Resevic*, 262 F. Supp. 36, 6 V.I. 196 (D.V.I. 1967). Therefore, even if the contract were within the Statue, summary judgment would be improper because a question of fact regarding performance would remain for the jury.

Issue preclusion applies where an issue has been *actually* litigated. *Bower v. O'Hara*, 759 F.2d 1117 (3d Cir. 1985). The doctrine provides that when an issue of ultimate fact has been determined by a final judgment on the merits that issue cannot be relitigated. *Dowling v. United States*, 493 U.S. 342, 107 L. Ed. 2d 708, 110 S. Ct. 668 (1990). In this case, it is entirely consistent with the evidence that Sparling and Smith simply agreed that they would never see any money from the Point Rendezvous deal because the investment was a financial failure. It appears that, upon receiving the Robsons' letter, the issue of Point Rendezvous was simply dropped and was treated by Sparling as a bad business deal. That is to say, the issue was not actually litigated because at the time of their divorce, the couple considered the issue moot.

Further, the issue of whether the Point Rendezvous interest was or was not marital property is not the same issue that is being litigated here—namely, whether there was an agreement between the Robsons and Smith, what the terms of that agreement were, and whether the Robsons breached that agreement. Finally, the issue of Point Rendezvous, however it is framed, was in no way essential to the divorce, it was not mentioned at all in either the property agreement or the divorce decree. Therefore, the Defendants' motion will be DENIED with respect to the issue of collateral estoppel.

### 4. The issue is ripe for determination.

Defendants argue that, because Smith was only entitled to a percentage of the profits, and there have not been any profits, Smith's claim for breach of contract is not ripe for adjudication, in that, there is no genuine controversy. Stated differently, Defendants maintain that there cannot have been breach *yet* because there was no duty to perform until *after* Point Rendezvous was profitable (*i.e.* the Robsons had been reimbursed for their initial cash investment). Therefore, Defendants argue, no contractual duty had become due so there was no breach.

However, Smith alleges that he was wrongfully excluded from Point Rendezvous affairs, including the sale of some of the properties. As a result, he has no means of determining whether the project, as a whole, has been profitable or not.[5] Thus, Smith asserts, if profit was indeed a

---

[5] It has not been conclusively established whether the project was or was not profitable. Nor has it been determined what the parties meant by "profit." Therefore, in this

condition precedent to his receiving a percentage from the land sales, it may be excused because the Robsons may have caused the business to be unprofitable by excluding him. Although reimbursing the Robsons for their investment may have been a condition precedent, that condition can be excused if Defendants caused the nonperformance. *See, United Corp. v. Reed, Wible and Brown, Inc.*, 626 F. Supp. 1255, 22 V.I. 201 (D.V.I. 1986); *but see, Wise v. DeWerd*, 5 V.I. 493 (3d Cir. 1966) (Where joint adventures agree that that profits would be paid upon the selling of certain lots, and those lots were not sold, none of the profits were payable.).

In addition, Smith argues that the Robsons repudiated the Point Rendezvous agreement when they stated that he had no interest in the project. If a party to a contract learns of a prospective unwillingness to perform, he may, in some circumstances, sue for the breach under the doctrine of anticipatory repudiation.[6] As a general rule, a repudiation justifies an immediate action for a total breach. RESTATEMENT (SECOND) OF CONTRACTS § 317. Repudiation occurs when a party to a contract makes clear his intention to breach before the time to perform. *United Corp. v. Reed, Wible and Brown, Inc.*, 626 F. Supp. 1255, 22 V.I. 201 (D.V.I. 1986); RESTATEMENT (SECOND) OF CONTRACTS § 250.

Here, the repudiation by the Robsons was express. They maintain, as was expressed in their letter, that Smith has given up his interest in Point Rendezvous and that he is no longer entitled to any of the profits from the project. Therefore, Smith need not wait until all of the lots are sold (if that is what the contract required) before suing for the breach. To the

---

context, the term is ambiguous (*i.e.* whether Smith should have receive 25% of the profit derived from those properties which were sold or whether he was expected to wait until the total venture was profitable). The issue of profits must be determined by looking to the terms of the agreement—a job for the fact finder. Authorities agree that, although the meaning of language is one of fact, in many instances the question should be treated as a question of law and should be determined by the trial judge. However, where there is no writing and the terms of an agreement must be proved by extrinsic evidence, the question of meaning should be left to the jury. *Joseph v. Gibbs*, 36 V.I. 115 (D.V.I. 1997); RESTATEMENT (SECOND) OF CONTRACTS § 238.

[6] The remedy for repudiation is the right of the nonbreaching party to seek immediate damages for a total breach. Upon breach the nonbreaching party may elect contract damages, restitution, or in some cases, specific performance. 1 V.I.C. § 4; RESTATEMENT OF CONTRACTS § 381.

contrary, he may be entitled to restitution of what he has contributed to the venture in the form of money or services. He may also be entitled to damages as compensation for the gains prevented, *i.e.* lost profits, if these can be proved with the requisite degree of certainty.[7]

■ Further, with respect to the issue of profit, a joint adventurer may demand an accounting. Any partner has a right to a formal accounting of joint venture affairs when he is wrongfully excluded or where the circumstances render it just and reasonable. 26 V.I.C. §§ 71-75. This right derives from his right to be informed. 26 V.I.C. § 73 (duty to render full information). Thus an accounting is the appropriate remedy for disputes between joint adventurers—but this remedy is not exclusive.[8] The nonbreaching party may also seek damages at law. *See,* Crane, LAW OF PARTNERSHIP § 69. Therefore, in cases such as this one where there are many alleged transactions at issue, an accounting may be an appropriate remedy.

■ In addition, Smith claims that the Robsons breached the fiduciary duties owed to a joint adventurer such as the duty to account for profits and for joint property. Whether the Robsons wrongfully excluded Smith is a question of fact for the jury. As joint adventurers the parties owed a fiduciary duty to one another and, each had the obligation of fairness, good faith and full disclosure to the other. *Fountain Valley Corp. v. Wells,* 19 V.I. 607 (D.V.I. 1983). Hence, summary judgment on this issue will be DENIED.

### 5. The counterclaims should not be bifurcated.

■ Finally, Defendants argue that their counterclaims should be bifurcated because of the delay and protracted litigation that has occurred. However, all claims have the same parties and involve the same real property. Moreover, both parties' claims arise out of an alleged agreement between Kevin Smith and the Robsons. Finally, because the

---

[7] Neither party provided the Court with either the price paid for the Point Rendezvous property, nor with an estimate of what that property is worth today, *i.e.* the fair market value of the real estate.

[8] A fiduciary that has acquired a benefit by breaching a fiduciary duty is under a duty of restitution; and may be guilty of tortious conduct as well. Thus, the beneficiary can obtain relief either at law or in equity for the injury. Where the breaching party disposes of property in violation of his duty he holds any property received in constructive trust for the other. RESTATEMENT OF RESTITUTION §§ 138, 198.

Court has ruled on all outstanding motions, this matter may be set for trial. Therefore, Defendants' motion to bifurcate will be DENIED.

## 6. Defendants' request for sanctions shall be denied.

■ In addition, Defendants seek sanctions against Plaintiff's counsel for unduly delaying this case. However, in light of the three sets of motions for summary judgment (which were opposed three times and replied to three times) and the other voluminous and, frankly excessive motion practice in this case,[9] *far beyond that allowed by the Local Rules of Court which themselves require sanctions*, the Court will not hold Plaintiff's counsel responsible for the delay in this case by imposing sanctions. Therefore, Defendants' Motion for Sanctions will be DENIED.

## 7. Whether Plaintiff has relinquished his interest is a question of fact.

■ Defendants also urge that Smith relinquished any interest that he might have had in Point Rendezvous when he came to the Robsons seeking additional money. The Robsons claim that Smith simply couldn't wait for any possible profits from Point Rendezvous, and that, instead, he sought a salary of $5,000 per month. Further, Defendants maintain that, when they agreed to pay Smith this salary, and to have him manage one of their other businesses in exchange (*i.e.* Marina Market) Smith gave up his previous deal in exchange for this new arrangement.[10] In support of this contention, Defendants point out that, at the time of his divorce, Smith was aware of the Robson letter stating that he had given up his interest in Point Rendezvous in exchange for a position at the Marina Market, and that Smith acquiesced.

Smith, on the other hand, asserts that he worked for the Robsons on this new project, as well as the Point Rendezvous project, and that he never relinquished his interest. He explains that he only went to work full time at the Marina Market at the Robsons request, and by that time, he

---

[9] *See, for example,* "Defendants' Motion For Leave to Attach Its Reply Brief as a Supplement to Its Supplemental Submission Outlining Misrepresentations of Fact and Law by Plaintiff's Counsel."

[10] There is litigation pending in the District Court of the Virgin Islands regarding the Marina Market agreement.

had substantially completed subdividing Point Rendezvous. Thus, Smith denies that there was a second oral agreement modifying the first oral agreement. To the contrary, Smith argues that this second agreement was in addition to the former agreement.

It is settled law that any contract may be modified by subsequent oral agreement of the parties. *McKenzie Construction, Inc. v. St. Croix Storage Corp.*, 37 V.I. 93 (D.V.I. 1997). However, whether the parties intended to modify their initial agreement is a matter of intent. Viewing the evidence in a light most favorable to the Plaintiff, a reasonable jury could find that the Marina Market agreement was separate and unrelated, and that it did not modify the Point Rendezvous agreement. Thus, the terms of the Marina Market agreement, like the terms of the Point Rendezvous agreement, must be determined by the jury. Accordingly, Defendants' Motion to Dismiss will be DENIED with respect to modification.